THE STATE, ESTATE OF JOHN CROSBY BROWN ET AL.,
PROSECUTORS, v. THE TOWN OF UNION ET AL.

Submitted March 28, 1898—Decided June 13, 1898.

1. When an act is susceptible of two constructions, that which will validate it must be adopted, and not that which will render it unconstitutional.

2. The word "towns," in the act of April 20th, 1886 (*Pamph. L.*, *p.* 243), must be accepted in its broad, generic sense, embracing the whole range of bodies corporate less than counties, established for local government. Applying that meaning to the word, the act is general and constitutional.

3. The proceedings to construct the sewer having been commenced under the act of 1886, the contract between the town and the owners of land adjoining the town, made under that act, was not impaired or violated by making the assessment under the act of February 19th, 1895. *Gen. Stat.*, *p.* 2138. That act required merely an ascertainment of the amount of prospective benefits to be paid *in futuro* where connections were constructed, and was a change in procedure only, in nowise affecting the substantial rights of the parties.

4. Neither the act of 1886 nor the contract between the landowners of lands outside of the town limits exempted them from liability to assessment for benefits conferred upon their lands within the town by so much of the sewer as is within the town.

5. After confirmation by the Circuit Court, under the eleventh section of the act of 1886, questions of fact therein adjudicated and decided will not be reviewed on *certiorari*.

On *certiorari*.

Before Justices DEPUE, VAN SYCKEL and GARRISON.

For the plaintiffs, *Smith & Mabon* and *John P. Stockton*.

For the defendants, *William C. Heppenheimer* and *Richard V. Lindabury*.

The opinion of the court was delivered by

VAN SYCKEL, J.    This *certiorari* was sued out to test the validity of a sewer assessment in the town of Union.

The sewer was constructed under an act entitled "An act providing for sewerage in and through certain towns in this state," approved April 20th, 1886.    *Pamph. L., p.* 243.

The towns to which it applies are those described :

*First.* "That whenever any town in this state is or may be so located that one or more large unimproved and intervening tract or tracts of land lie between said town and tidewater."

*Second.* "And by reason thereof no main outlet sewer or sewers can be constructed from said town across or through said tract or tracts of land without either the consent, of said landowner or owners and the municipal authorities (if any) intervening between said town and tidewater, or first legally acquiring, at large expense, the lands and outlets necessary for said sewer or sewers."

*Third.* "And said owner or owners of said intervening tract or tracts may hereafter determine, in the improvement of their said lands, to construct and build, at his or their own expense, one or more main or outlet sewer or sewers, and of such size, dimensions and kinds as such landowner or owners may deem sufficient for the proper drainage and sewerage of his or their said land or lands in, through and over the same to said tidewater or to some other sewer or sewers running to said tidewater."

*Fourth.* "He or they furnishing or securing the necessary lands and outlets for the same and procuring such municipal or other consent thereto as may be necessary."

*Fifth.* "And in that event it might be to the great advantage and benefit of any such town, or one or more portion or portions thereof, that the said proposed sewer or sewers be built and constructed in such manner and style, and of such increased extent, size and dimensions, with the necessary laterals and appurtenances, as to afford and provide one or more main outlet sewer or sewers and the necessary drainage and sewerage, not only for said land or lands of such owner or owners, but for so much of the drainage area of said town as can or may be by or into the same."

It is declared to be lawful in any such case, and the neces-

sary power and authority is granted, for the town council or governing body of any such town in this state, if deemed for the best interest of said town or any portion thereof, to make or enter into a contract or agreement, in the name of the said town, for the building and construction of the same as hereinafter provided.

The prosecutors insist that this classification is illusory, and therefore that this act is local and special and unconstitutional.

In *Van Riper* v. *Parsons*, 11 *Vroom* 1, it was contended that the word "towns" did not embrace "cities," but Chief Justice Beasley said: "This argument is founded on the false basis of looking only at the letter of the law and turning away from its spirit. It is true that if the letter of the law were absolutely unambiguous and definite, and were susceptible of but a single meaning, the clause would have to be read in such sense, no matter to what fatuity it might lead. But such is not this case; the word town has no such fixed signification as this, for though in its narrower sense it denotes something other than a city, in its broader scope it comprehends such a municipality."

In *Pell* v. *Newark*, 11 *Vroom* 550, the late Chief Justice stated that he had again carefully considered the grounds of his former conclusion, and that he still adhered to his view that "towns," in its largest signification, included "cities."

Mr. Justice Dixon, in *Banta* v. *Richards*, 13 *Vroom* 497, says: "The word 'towns' is sometimes employed in a broad, generic sense, embracing both townships and cities, and the whole range of bodies corporate, less than counties, established for local government."

Again, in *Broome* v. *Telephone Co.*, 20 *Vroom* 624, Mr. Justice Dixon says the word "towns" must be accorded this broad meaning whenever there is reason for so doing.

In the recent case of *Stout* v. *Glen Ridge*, 30 *Vroom* 201 (in the Court of Errors and Appeals), the present Chief Justice, in delivering the opinion of the court, referred with approbation to the view expressed in the cases before cited.

The word "towns" being susceptible of a construction which will make the act general, and not special and local, and therefore unconstitutional, we must presume that the legislature adopted the word in its larger and not in its narrower signification, and conclude that the act of 1886 applies to the whole range of bodies corporate less than counties.

The act is, therefore, unquestionably general in form, extending its provisions to all municipalities which now or hereafter may find it necessary to invoke its aid.

This court cannot say in how many localities besides the town of Union it may be wholly impracticable to secure sewerage without the benefit of this legislation. It will be practically impossible for places within the description of this enactment to perfect a drainage system in any way other than that thereby provided or by some like scheme.

I am not prepared to hold that the inhibition of special legislation was intended to render the legislature incapable of granting the only relief that seems to be practicable in this case, even though, at present, no other municipality may be in a position to adopt the provisions of the law.

The act is for a special class of local governments so situated that lands owned by individuals, or other municipalities intervene between them and tidewater, and it embraces all that could use its provisions. This is the only quality descriptive of the character or location of the municipalities for which the act is designed, and that is not illusory; it is the circumstance which renders the legislation necessary.

All the other conditions recited in the enactment pertain either to the election of the constituted authorities to adopt the provisions of the act or to the steps which must be taken to put it in force and make it available.

Cities and towns not so situated can have recourse to other existing legislation, which is inadequate for the relief of the defendant in this case.

In my judgment, the act of 1886 furnishes a legal basis for the proceedings which have been certified.

The proceeding was begun under the act of 1886, the com-

missioners having been appointed in 1894, and it is argued that the assessment is illegal and in violation of the contract between the town and the owners of the lands adjoining the town, because prospective benefits were assessed against such owners on their lands within the town under the act of February 19th, 1895. *Gen. Stat., p.* 2138.

That act is general, superseding all other methods of assessing such benefits. The only difference introduced by the act of 1895 was that when the trunk sewer was completed the assessment for laterals was to be made at once, but to be payable *in futuro,* when connection with the trunk sewer was effected, while under the act of 1886 the assessment for benefits arising from laterals could be made only after the laterals were constructed. The act of 1895 merely required an ascertainment of the amount of benefits, being a change only in procedure, which in nowise impaired the contract or affected the substantial rights of parties. *Vreeland* v. *Bayonne,* 31 *Vroom* 168.

Nor are the prosecutors exempt from assessments upon their lands within the limits of the town of Union.

Neither the contract made between them and the town nor the act of 1886 gives them any claim to such exemption. The payments made by them under that act and their contract are for benefits conferred upon their lands outside the town.

The commissioners appointed by Mr. Justice Knapp, by their report dated February 14th, 1890, said that the town should pay forty-four per cent. of the total cost of the sewer, and that the joint owners should pay the remainder. This report was acquiesced in by all parties and these percentages have been adhered to.

The lands of the prosecutors within the town are equally liable to assessment with all other lands in the town for the sewer within the corporate limits.

The objection that the commissioners did not take the oath prescribed by the act of 1886 is without merit at this stage of the controversy.

The oath taken by the commissioners is that prescribed by

section 4 of the act of 1886.    *Pamph. L., p.* 245.    The oath required is that in section 10, page 249.

The oath taken was in substantial compliance with the statute.    No objection having been raised to the proceedings on this ground on the hearing in the Circuit Court, it cannot be successfully made here.

The eleventh section of the act of 1886 declares that confirmation by the Circuit Court shall be final and conclusive upon the owners of lands affected by the assessment.

The conclusive quality of the decision of the Circuit Court is recognized in *Benedictine Sisters* v. *Elizabeth,* 21 *Vroom* 347, and also in *Stockton* v. *Newark,* 29 *Id.* 116.

All the objections made to the assessment were heard and finally disposed of in the Circuit Court.    If there was any irregularity or defect in form, or any illegality in the assessment, the act of March 23d, 1881 (*Gen. Stat., p.* 3404, § 547), forbids setting it aside for that reason.

We find the assessment substantially correct, and adopt it under that act.

But if there is any infirmity in these conclusions, the prosecutors cannot now avail themselves of it.

These commissioners were appointed by Mr. Justice Lippincott, on the 27th of October, 1894, under the act of 1886.

The report of the commissioners came up for confirmation July 27th, 1895, and objections to it were heard October 12th, 1895.    On that day it was referred back to the commissioners for further consideration.    A new assessment was filed in January, 1896, to which the joint owners objected.    These objections were heard in the Circuit Court, and on September 1st, 1897, an order was signed overruling the objections and confirming the report.

No step was taken thereafter by the prosecutors to challenge the validity of these proceedings until this writ was applied for on the 9th of February, 1898.    In granting these writs of *certiorari* the Supreme Court ordered a rule to be entered, " giving leave to the defendant, the town of Union, to apply on the hearing of the writs to dismiss the same, on

the ground that no objections were made by the prosecutors in said writs at the time the assessments brought up by said writ for review were before the Circuit Court, and on the ground of laches generally."

In *Moran* v. *Hudson City,* 5 *Vroom* 25, this court refused relief to the prosecutor in a similar case, and in *Post* v. *Passaic,* 27 *Id.* 421, such delay was held to be fatal to the right of the landowner to assail the assessment.

The proceedings certified are, therefore, affirmed, with costs. If any infirmity had been found in them, the writ would have been dismissed on the ground of laches.