AMPARO MINING COMPANY, complainant-respondent,

. *v.*

FIDELITY TRUST COMPANY, executor of Edward M. Paxson, defendant-appellant.

[Argued March 3d, 1909.  Decided June 14th, 1909.]

The court of chancery has jurisdiction of a suit to establish a trust in shares of stock in a New Jersey corporation, although the trustee resides out of the state, and cannot be served with process, but can only be brought in by the statutory proceedings against absent defendants.

On appeal from an order of the court of chancery advised by Vice-Chancellor Stevenson, whose opinion is reported in *74 N. J. Eq. (4 Buch.) 197.*

*Mr. Samuel H. Richards* (*French & Richards,* on the brief), for the respondent.

*Mr. Richard V. Lindabury,* for the appellant.

The opinion of the court was delivered by

SWAYZE, J.

The bill charges that the complainant is a New Jersey corporation; that Paxson was its president and chairman of the executive committee; that as a result of transactions with Williams and Graham, which need not here be set forth, Paxson advanced $40,000 to settle their claims against the complainant, and acquired from them five hundred and forty-nine thousand five hundred and four shares of the capital stock of the complainant; that this stock is the property of the complainant, subject only to the repayment of the advance of $40,000, with interest, which has been tendered. The important prayers of the bill are that it may be decreed that the stock was held by

Paxson·in his lifetime and is now held by the defendant as his executor, as trustee of the complainant, subject to the repayment of the money advanced, and that Paxson had not, and his estate has not, any interest in the stock except as security for the repayment of the advance. There is a further prayer that the defendant as executor be decreed to assign, transfer and deliver the stock to the complainant. The defendant pleads to the jurisdiction, averring that it is not a resident or a citizen of New Jersey or existing as a body corporate under and by virtue of our laws; that it has no office, agent or agency or place of business within the state and never has had, and is not now engaged in business within the state, and never has been; that it is a body corporate under the laws of Pennsylvania; that the ordinary proceedings against absent defendants have been taken against it, but that no process or other legal notice has been otherwise served. It submits that the court of chancery has no jurisdiction and that no decree can be entered in the suit which is enforceable against the defendant under the constitution and laws of the United States of America or of the State of New Jersey. The learned vice-chancellor advised an order overruling this plea.

It is conceded that in order to sustain jurisdiction over the defendant it must appear that the proceeding is a proceeding *quasi in rem* and that our statutes authorize the court of chancery to entertain jurisdiction of such proceedings as distinguished from proceedings *in personam,* over which alone a court of equity has jurisdiction in the absence of statute.

The question whether the proceeding can be sustained as a proceeding *quasi in rem* depends, of course, upon whether there is a *res* in this state upon which the decree can operate. That involves the question whether the stock of a New Jersey corporation belonging to a resident of another state can be said to have a *situs* in New Jersey, when it does not appear that the certificates of stock are within the state. Since the question is one which involves the rights of a non-resident under the fourteenth amendment to the federal constitution as construed in *Pennoyer* v. *Neff,* the decisions of the federal courts are of great, if not controlling, weight. The precise question has been decided in

*Jellenik* v. *Huron Copper Mining Co., 177 U. S. 1.* At page 11 Mr. Justice Harlan distinctly stated that the question to be determined was whether the stock in question was personal property within the western district of Michigan. The Michigan statutes contain provisions very similar to ours, declaring that the stock should be deemed personal property and should be transferred only on the books of the company; that the company might conduct its business, in whole or in part, in any place in the United States or any foreign country; might have a business office out of the state and hold any meeting of the stockholders or directors at such office; that the shares might be taken in execution and attached by process of the Michigan courts. In answer to the argument that the certificates were held outside the state, he said: "The certificates are only evidence of the ownership of the shares and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner." In that case two of the defendants, who were held to be indispensable parties, were residents of Massachusetts, and one, also an indispensable party, resided in Michigan, but not in the western district. The company itself was made defendant, and filed the plea to the jurisdiction. The point actually decided was that the court had jurisdiction where the question involved was the title to the stock of a corporation domiciled within the district. That is exactly the present case. If the allegations of the bill are true— and they must be taken as true for the purpose of determining the validity of the plea—the precise question involved is whether Paxson's executor holds the stock of a New Jersey corporation in trust for the complainant. It is not as contended by appellant a bill for specific performance of a contract. A similar question was presented in *Andrews* v. *The Guayaquil and Quito Railway Co., 69 N. J. Eq. (3 Robb.) 211,* affirmed on the opinion of Vice-Chancellor Stevens, *71 N. J. Eq. (1 Buch.) 768,* where we sustained the jurisdiction under the facts of that case.

It is argued by counsel for the appellant that the reasoning of the *Jellenik Case* does not command assent and that we are not bound to follow it. We think, however, that, aside from the respect due the tribunal which pronounced that opinion and the peculiar force which ought to be given to its determination in a matter. of that character, the result itself was in accordance with sound principle. The fact is that the property right of a stockholder in a corporation is an intangible thing, which may well be called a chose in action, and has no actual *situs* anywhere in the sense that real estate or tangible chattels have. The principle which should guide in such a case is said by Professor Dicey, in his book on "Conflict of Laws," to be that choses in action should be held to be situate at the place where they can be effectively dealt with, from which it follows that debts, choses in action and claims of any kind must be held situate where the debtor or other person against whom a claim exists resides; or in other words, debts or choses in action are generally to be looked upon as situate in the country where they are properly recoverable or can be enforced. And he says:

"Foreign stock cannot be fully transferred by the representative of the deceased without doing some act in a foreign country. The certificate or other documents, if any, held by the owner of such stock may be in England but they are mere evidence of a debt due from a foreign government, or in other words from a debtor not resident in England, and this debt, *i. e.*, the stock, must apparently be situate out of England." *Dic. Confl. L. (1st Am. ed.) 318-320.*

Accordingly it is held that shares of stock for purposes other than taxation and some similar purposes, are personal property whose location is in the state where the corporation is created. *Cook Corp.* § 485. These reasons are applicable to the present case. A complete and effectual transfer of the stock can only be had upon the books of the corporation in New Jersey, and if the stock is ever to be converted into cash, otherwise than by mere sale, it must be by a distribution of the assets of the corporation to be had in New Jersey. In view of the control of New Jersey courts over our corporations, and especially of the necessity of that control being made effectual in case of a winding up, it is, we think, quite as important that the title to the shares

should be determined by our courts as that the title to real estate in New Jersey should be so determined. The cases which hold that stock has a *situs* in the state of the domicile of the owner for purposes of taxation are rested upon a different ground, which is recognized by the cases as peculiar to the question of taxation, and rests upon the legal fiction *mobilia personam sequuntur*— a fiction which is not to be unnecessarily extended.

The right to vote at corporate elections depends upon the ownership of the stock. By the express provisions of our Corporation act the determination of a contested election is conferred upon our courts, and such a determination may necessitate an adjudication of the title to the stock. A corporation may also compel two claimants to stock to interplead. *Cook Corp.* § *387.* Chancellor Green so held in *Mount Holly, &c., Turnpike Co.* v. *Ferree, 17 N. J. Eq. (2 C. E. Gr.) 117,* and dismissed the bill only because the complainant had assumed the responsibility of acting in advance of the order of the court and had incurred all the liability they could incur. A bill of interpleader as he there said, is proper, only where the complainants have property or funds in possession, or under control to which there are two or more claimants. That case is a direct authority in point. The complainant has all the possession of which such a chose in action as a share of stock is possible, as distinguished from the possession of the certificate which is only its paper representative; it has at any rate the control of the substantial thing which the certificate only represents. It has such possession as is required for the purpose of a levy under execution or attachment, and it is seeking only a judicial ascertainment of the title to its own stock, which involves the determination of the beneficial ownership of the assets, real and personal, of the corporation, and the ultimate title thereto. We think for such a purpose at least the stock has a *situs* in this state.

It is argued, however, that the proceeding is necessarily *in personam* for the reason that some personal act will be necessary on the part of the executor in order to vest the title to the stock in the complainant. The case seems to be thought analogous to a bill to remove a cloud from the title to real estate. This analogy fails, however, for the reason clearly set forth by the

learned vice-chancellor that in the case of real estate some form of conveyance is required unless there is a statute giving the decree the effect of a conveyance. No such necessity exists in the case of a chose in action, to which a certificate of stock is analogous. In this case a determination that the stock belongs to the complainant becomes effective at once, and the complainant may or may not issue a new certificate therefor. All that the decree need do to effectuate the complainant's title is to decree that the certificates in the hands of the defendant are null and void. We are not now concerned with the possible rights of a *bona fide* transferee of the present certificates. We are dealing only with the question of jurisdiction of the subject-matter. Our courts can protect the rights of a *bona fide* holder as well as the courts of his own domicile. We think there is a *res* within this state and that no personal action of the defendant is necessary which would require a decree *in personam.*

The question whether our legislation has actually conferred jurisdiction is a question of statutory construction. The provision of our statute is very general, and authorizes proceedings in any case where the defendant is out of the state or cannot upon due inquiry be found therein, or conceals himself within the state. The language is more general than that of the act of congress which was under consideration in the *Jellenik Case,* and is similar to the provision of the Nebraska statute which was before the supreme court of the United States in *Arndt* v. *Griggs, 134 U. S. 316,* and to the provision of the Texas statute which was under consideration in *Roller* v. *Holly, 176 U. S. 398.* The court there said that the provision had no application to suits *in personam* and must be restricted to actions *in rem,* and held that as it was impossible, in view of the generality of the statute, to say that it contemplated a procedure in one class of cases and not in another, the only reasonable construction was that it applied in all cases where, under recognized principles of law, suits might be instituted against non-resident defendants. The distinction between these two latter cases and *Hart* v. *Sansom, 110 U. S. 151,* is sufficiently pointed out by the opinions of Mr. Justice Brewer and Mr. Justice Brown. It is said by way of argument on the part of the appellant that this rule does not apply ex-

cept in cases where the complainant is in possession of the *res.* We are not prepared to say that the scope of the statute is thus limited. The difficulty in *Hart* v. *Sansom, supra,* was that the judgment which was there relied upon against Hart's claim was not an adjudication affecting him. As Mr. Justice Brewer said: "As there was no allegation that he was in possession, the judgment for possession did not disturb him; and the decree for cancellation of the deeds referred specifically to the deeds mentioned in the petition and there was no allegation in the petition that Hart had anything to do with those deeds. There was no general language in the decree quieting the title as against all the defendants; so there was nothing which could be construed as working any adjudication against Hart as to his claim and title to the land. Mr. Justice Gray was careful to call attention to the fact that to deprive Hart of his title, some act would, in the state of the existing Texas legislation, be necessary on his part—the delivering up of his deed to be canceled or the execution of a release—an act which could only be compelled, as the Texas law stood, by a decree *in personam.* But even if the statutory proceeding were limited to cases where the complainant is in possession of the *res,* we think, as we have already said, that the complainant has such possession."

The order is therefore affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL—14.

*For reversal*—None.