REALTY COMPANY OF NEW JERSEY, appellant,

*v.*

M. LORETTA BURGHARDT, respondent.

[Argued. March term, 1919.   Decided November term, 1919.]

1. An action to quiet title to real estate, instituted under the provisions of the act of 1870 (*Comp. Stat. p. 5399*), and prosecuted under the provisions of the Chancery act (*Comp. Stat. p. 413; P. L. 1902 p. 512*), is cognizable by the court of chancery under that legislation.

2. The acts of 1870 and 1902 being *in pari materia* are to be read together, and are a constitutional exercise of legislative power.

3. The act of 1902 being generic in character and requirements, and without qualification or limitation, applies to all suits in chancery, comprehended within the provisions of "An act to compel the determination of claims to real estate in certain cases, and to quiet title to the same," approved March 2d, 1870.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson and reported in *90 N. J. Eq. 347.*

*Messrs. Hartshorne, Insley & Leake,* for the complainants.

*Mr. Clarence Linn,* for the defendant.

The opinion of the court was delivered by

MINTURN, J.

The substantial inquiry in the case involves the construction to be put upon an act of the legislature entitled "An act to compel the determination of claims to real estate in certain cases, and to quiet the title to the same," approved March 2d, 1870, in conjunction with sections 10 and 11 of the revision of the Chancery act of 1902. *Comp. Stat. p. 413.*

The bill was filed to compel specific performance of a contract for the sale of certain land in Jersey City, the title to which the

vendee refused to accept upon the ground that the title thereto was not marketable.

The alleged imperfection arose out of the fact that Charles Siedler, a previous owner of the *locus in quo*, for the purpose of perfecting title thereto, acquired by him to one-half of the original tract, and of which he had been in adverse possession for over twenty years, filed a bill of complaint, in the year 1903, in the court of chancery, to quiet his title to the land thus acquired; alleging, *inter alia*, that his title was denied and disputed by a large number of persons, specifically named, and also by Jacob Vreeland, the former owner of the entire tract, "or his heirs, devisees and personal representatives."

Due process of publication as required by the statute was effected, after which, upon proof of compliance with the statutory requirements, the chancellor made a final decree adjudging that as to the lands in question, including the *locus in quo*, the said "Jacob Vreeland, his heirs, devisees and personal representatives have no estate, interest in or encumbrance upon the same, or any part thereof," and the title of the complainant Siedler thereto was thereby determined, "fixed and settled, and declared to be good."

The complainant in this suit acquired title to the *locus in quo* from Siedler. The contention now is, that the proceedings taken to quiet the Siedler title were not warranted or authorized by the legislation to which we have referred, and the title was rejected as unmarketable for that reason.

The contention is based upon the ruling of Vice-Chancellor Stevens in *Hill* v. *Henry*, *66 N. J. Eq. 150*, decided more than a year subsequent to the decree in the *Siedler Case*. The learned vice-chancellor, in the case referred to, held that the tenth section of the Chancery act of 1902 did not apply to proceedings to quiet title, and doubted *arguendo* whether the act was constitutional under the due process provision of the federal constitution.

The act of 1870 enables a person in peaceable possession of lands and claiming to own the same "to bring and maintain a suit in chancery to settle the title of said lands, and to clear up all doubts and disputes concerning the same."

The Chancery act of 1902 provides that—

"In all actions hereafter commenced, whenever it shall appear * * * that any person mentioned in said bill or petition or his heirs, devisees or personal representatives are proper parties defendant * * * and that the complainant after diligent and careful inquiry, as in the case of absent defendants has been unable to ascertain the names and residences of such of his heirs, devisees or personal representatives, * * * such action may proceed against such person by name, and his heirs, devisees and personal representatives, as in the case of absent defendants, whose names are known * * *. All such defendants * * * shall thereupon be bound by all orders and decrees in said cause as if they had been duly named and served with process in this state."

Vice-Chancellor Lane, in 1918, in *Silver* v. *Gattel, 89 N. J. Eq. 402,* took a contrary view of this legislation, and held the construction adopted in *Hill* v. *Henry* to be against the express language of the legislation, its clear purpose and against the established practice. The chancellor in the case *sub judice* followed the determination in *Hill* v. *Henry,* and dismissed the bill, and from that decree this appeal is taken.

The legal importance of the present inquiry, involving, as it does, the settlement of titles to real estate, the accepted legality of which has been founded and predicated upon the provisions of this legislation, is obviously accentuated by this contrariety of judicial opinion.

The fact that the legislature in 1902 prescribed without limitation a method of procedure in chancery causes, based upon the existing provisions of the act of 1870, would indicate a legislative recognition and adaptation of the earlier legislation to all cases arising in the court of chancery, where the situation to be remedied was as defined in the act of 1870. That act which concedes the right and the remedy, it will be observed, provides no limitation and imposes no qualification as to the form of action upon the right thus conferred.

If the legislature in 1902 intended to impose a limitation as to the character of the parties, or the nature of the right or the character of the remedy involved, we may assume that they would have expressed it in the later legislation. Were there a doubt after a period of over thirty years unquestioned legislative recognition of the provisions of the act of 1870, as to the general

application of its remedial provisions to all cases involving the determination of titles to land, arising in the court of chancery, it is reasonable to assume that instead of specifically providing in the act of 1902 for the general application of the statutory provision "in all cases," the legislature would·have qualified and limited the application of the existing legislation which conferred the right and the remedy.

The statutes being *in pari materia* will be read together, thus constituting a comprehensive legislative scheme expressive of the legislative intent. *1 Kent Com. 185; 1 Cyc. 491*, and cases.

Where, as in the case at bar, the language is plain, generic and unambiguous, there is no room for judicial construction. *United States* v. *Fisher, 2 Cranch 358; Thornley* v. *United States, 113 U. S. 310; Gillard* v. *Manufacturers Co., 107 Atl. Rep. 448.*

The act of 1902 has been subjected to the scrutiny of the court in a partition suit, and was upheld in *Cona* v. *Henry Hudson Co., 86 N. J. Law 154.*

The learned chancellor, writing the opinion for this court in that case, relied upon the reasoning expressed in *United States* v. *Fox, 94 U. S. 315,* and *Arndt* v. *Griggs, 134 U. S. 316,* where the procedural distinction of cases *in rem* and *quasi in rem* is fully discussed and emphasized. Since those deliverances the supreme court of the United States has had substantially the question *sub judice* presented to it in *American Land Co.* v. *Zeiss, 219 U. S. 47,* in which the California statute involved, was enacted to validate title to real estate, resulting from the loss of public records, consequent upon the earthquake and conflagration in San Francisco.

The state court had affirmed its validity in *Title* v. *Document Rest. Co., 150 Cal. 287.* That act provided for the issuance of process to "all persons claiming any interest in or lien upon the real property, or any part thereof."

The federal court held the statute valid to bar any persons defaulting and failing to answer, declaring in the opinion that "undisclosed and unknown claimants are to say the least, as dangerous to the stability of title as other classes."

This court, in *Jersey City* v. *Lembeck, 31 N. J. Eq. 255,* recognized the validity of the act of 1870, as a measure which resulted

in "remedying an inequity;" and Vice-Chancellor Van Fleet, in *Southmays* v. *Elizabeth, 29 N. J. Eq. 203,* and Chancellor Runyon, in *Holmes* v. *Chester, 26 N. J. Eq. 79,* recognized its practical utility and legality, the latter remarking that "the statute is remedial and highly beneficial. It should be construed liberally."

That the legislature of 1902, with this remedial act of 1870, and the adjudications construing it before it, intended to apply its provisions to all actions in the court of chancery, designed to determine the validity of titles to real estate, is evidenced by the generic comprehensiveness of the language employed in the latter act, which can leave no reasonable doubt that such was the legislative purpose.

The decree of the court of chancery will therefore be reversed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, KALISCH, BLACK—6.

*For reversal*—BERGEN, MINTURN, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—7.