This proceeding was initiated by a petition filed by The Prudential Insurance Company of America (hereinafter *Page 172 
referred to as Prudential) in pursuance of the provisions of a legislative enactment of 1940. P.L. 1940, ch. 208; N.J.S.A.17:34-43.1 et seq. The company, a stock life insurance corporation, has heretofore undertaken to acquire the shares of its capital stock for the mutual benefit of its policyholders. Resorting to the measures afforded by the act of 1913 (P.L. 1913ch. 99, now N.J.S.A. 17:34-33 et seq.) the company has procured 98.54 per centum of its stock. In 1940, the legislature, evidently resolving to augment the means by which stock life insurance corporations of our state could, under certain specified conditions, attain a complete mutualization, passed the act in question as a supplement to the 1913 act, supra.
The Prudential having reached the prerequisite status laid down by the statute, has entered into a contractual bargain with the owners of the shares of its capital stock remaining outstanding and now seeks by its petition an order approving the agreement and directing its consummation in conformity with the provisions of the statute.
At the hearing held in accordance with the design of the statute, one, and only one, policyholder interposed an objection. He favored the acquisition of the stock for the mutual benefit of the policyholders but requested a dismissal of the petition on the ground that the statute of 1940 is unconstitutional in that (1) it is special legislation, (2) it infringes due process because notice by publication rather than by written notice to each policyholder was required and given, and (3) it is violative of the fourteenth amendment to the federal constitution in that the same constitutes a taking of property without due process of law because "a reasonable measure for determining the fair value at which the shares of the insurance company may be purchased by agreement executed between the company and its stockholders," is not set up or established thereby.
The motion was argued orally by both counsel for the objector and the petitioner and at the close thereof I, tentatively, denied the application to dismiss, to the end that the factual proofs, contemplated by the statute, might be presented. *Page 173 
As the record will disclose, counsel for the objecting policyholder participated in this branch of the proceeding. Briefs have now been presented by both the objector and petitioner, thus indicating a desire by both that I express my views concerning the grounds asserted in support of the motion to dismiss.
Under such circumstances I am moved to express my reasons for, now, definitely, denying the motion to dismiss. In doing so I follow the three objections of the policyholder, in the order in which they have been hereinbefore specifically stated.
(1) The act P.L. 1940 ch. 208, is a supplement to the actP.L. 1913 ch. 99, and as such the two acts must be read together. Quigley v. Lehigh Valley Railroad Co.,80 N.J. Law 486; 79 Atl. Rep. 458; Central Railroad Co. v. State Board ofAssessors, 75 N.J. Law 771; 69 Atl. Rep. 239.
All legislation is based on a classification of its subjects and where such classification is fairly made and the legislation founded upon it is appropriate to such classification it is not in violation of article IV, section 7, paragraph 11, of our constitution. Van Riper v. Parsons, 40 N.J. Law 1; Wanser v.Hoos, 60 N.J. Law 482; 38 Atl. Rep. 449; 64 Am. St. Rep. 600.
A law is special, in a constitutional sense, when, by force of an inherent limitation, it arbitrarily excepts some persons, corporations, associations, or things from those upon which, but for such limitation, it would operate. Budd v. Hancock,66 N.J. Law 133; 48 Atl. Rep. 1023; Van Cleve v. Passaic ValleySewerage Commissioners, 71 N.J. Law 183; 58 Atl. Rep. 571;Raymond v. Township of Teaneck, 118 N.J. Law 109;191 Atl. Rep. 480; Dover v. Van Kirk, 123 N.J. Law 507; 9 Atl. Rep. 2d796; Equitable Beneficial Association v. Withers, 122 N.J. Eq. 134; 192 Atl. Rep. 511.
It is sometimes said the test of a special law is the appropriateness of its provisions to the objects it excludes.Burlington v. Pennsylvania Railroad Co., 104 N.J. Law 649;142 Atl. Rep. 23. "The test of the generality of a law is that it shall embrace all and exclude none whose conditions and wants render such legislation equally appropriate to them as *Page 174 
a class." Wanser v. Hoos, supra (at p. 525). The cases are uniform and numerous.
The case relied upon, by counsel of the objector, Perrine v.Jersey Central Traction Co., 70 N.J. Law 168, is not only distinguishable from but adds force to the authorities above cited.
The statutes here impugned, tested by these principles, manifestly do not enter the category of special legislation interdicted by the constitutional clause. They embrace all stock life insurance companies and their provisions empower any such company to mutualize its stock holdings under uniform conditions.
The assertion that, at the moment, the statute can apply only to the Prudential, is without force. If the enabling statute bestows the same powers upon all stock life insurance companies, as it does, it is not rendered special by the mere circumstance that only one of the class, presently, possesses the requisite conditions. In re Cleveland, 52 N.J. Law 188; 19 Atl. Rep. 17;20 Atl. Rep. 317; 7 L.R.A. 431; affirming 51 N.J. Law 319;18 Atl. Rep. 67; Brown v. Town of Union, 62 N.J. Law 142;40 Atl. Rep. 632; affirmed, 65 N.J. Law 601; 48 Atl. Rep. 562; Van Riper
v. Parsons, supra; Doherty v. Spitznagle, 104 N.J. Law 38;139 Atl. Rep. 424. Moreover the assumption that the statute is now available to only one stock life insurance company is not sustained by anything in the record.
The conditions imposed by the supplement of 1940 were designed to preserve the effectiveness of the earlier enactment. The determination of the percentage of stock to be first acquired at the appraisal price and the duration of the effort to do so, are matters appropriately entrusted to the legislature. Wanser v.Hoos, supra; Anderson v. Trenton, 42 N.J. Law 486, 488, 489;Doherty v. Spitznagle, supra; Helfer v. Simon,53 N.J. Law 550; 22 Atl. Rep. 120; Halsey v. Nowrey, 71 N.J. Law 481;59 Atl. Rep. 449; Oliver v. Burlington, 75 N.J. Law 227;67 Atl. Rep. 43.
(2) The essential element of due process of law is an opportunity to be heard and a necessary condition of such opportunity is notice. In proceedings which involve a determination *Page 175 
of the personal liability of a defendant, service of process upon him within the jurisdiction or his voluntary appearance is required. In proceedings substantially in rem, substituted service by publication or in any other authorized form is sufficient. Hinners v. Banville, 114 N.J. Eq. 348;168 Atl. Rep. 618, and cases therein cited.
This proceeding in its relation to policyholders is essentially one quasi in rem. Amparo Mining Co. v. Fidelity Trust Co.,74 N.J. Eq. 197; 71 Atl. Rep. 605; affirmed, 75 N.J. Eq. 555;73 Atl. Rep. 249; Gilson v. Appleby, 79 N.J. Eq. 590;81 Atl. Rep. 925; Realty Company of New Jersey v. Burghardt, 91 N.J. Eq. 120; 111 Atl. Rep. 275; Hartman v. Gindorff, 125 N.J. Eq. 325;5 Atl. Rep. 2d 686.
The objecting policyholder does not contend that personal service within the jurisdiction is required but he does argue that among the forms of substituted service, a personal letter, rather than publication, should have been required and used. Reasonable and practical considerations should dictate the type of substituted service rather than mere physical possibilities. It is estimated that the Prudential has outstanding 32,000,000 policies held by upwards of 20,000,000 individual policyholders and that the cost of mailing a simple notice to each policy holder would entail an expenditure of approximately $1,000,000, a sum materially in excess of the portion of the surplus of the company to be appropriated for the acquisition of the outstanding stock. "It should be kept in mind that the laws of a state come under the prohibition of the Fourteenth Amendment only when they infringe fundamental rights. A law must be framed and judged of in consideration of the practical affairs of man. The law cannot give personal notice of its provisions or its proceedings to everyone." American Land Co. v. Zeiss, 219 U.S. 47;31 S.C. 200; 55 L.Ed. 82.
The objecting policyholder, in fact, received notice and, as previously noted, appeared and took part in these proceedings, even to the extent of cross-examining witnesses. That the notice may not have been sufficient to bring in other or all policyholders is of no avail to him. His rights are neither *Page 176 
enlarged nor diminished thereby, nor are they in anywise dependent thereon. Moreover, the officers and directors of the company who occupy a fiduciary relationship toward the stockholders and policyholders, the trustees of the policyholders and the Commissioner of Banking and Insurance received notice and appeared in the interest of the policyholders.
(3) Nor does the legislation violate the due process clause of the federal constitution by failing to establish a reasonable measure for determining the fair value at which the shares may be purchased for retirement for the purpose of complete mutualization.
The contrary seems to be true and the statute presents two methods; the one, as here, by bargaining resulting in a contract, the execution of which is subject to the approval of the Chancellor, and, the other, an appraisal to be instituted by the owners of the outstanding stock, such appraisal likewise being subject to inquisition and approval by the Chancellor. The rights of the policyholders are fully protected by the legislative mandate.
The statute P.L. 1907 ch. 70; R.S. 17:34-9 is urged against this measure of value, but, in my opinion, it does not apply.
That act relates to capital stock life insurance companies seeking to dissolve; that is, wind up and end their affairs and corporate existence.
The acts here involved are not so designed but are directed to stock companies, seeking to continue, not as stock but mutual companies, not to dissolve and cease to exist, but to continue under new forms of corporate government.
Adverting, then, to the substantive factual questions to be specifically considered and determined by me in compliance with the statute, proof was adduced evidencing the notice to the Commissioner of Banking and Insurance and to the stockholders and the publication of the notice to policyholders in obedience to my order. The file of the proceedings pursued under the act of 1913 discloses that the Chancellor's confirmation made under the provisions of that statute was dated December 22d 1914, more than twenty years preceding the filing of this petition. *Page 177 
The evidence also revealed that of the 40,000 shares of stock now outstanding, 39,415.24 shares are now held by the trustees for the policyholders. The directors have retained 48 shares so as to preserve the corporate structure until full mutualization can be effected. The remaining 536.76 shares are possessed by others who have been continuously unwilling to transfer their shares to the company at the former appraisal value of $455 a share. Since the passage of the act of 1940, persistent negotiations have been conducted to acquire these residual shares of stock. Ultimately, upon the recommendation of the president and with the approval of the board of directors, the company contracted to purchase the 536.76 shares from the owners thereof at $1,500 a share subject to the approval prescribed by the statute.
It is apparent that the cost of these shares at the agreed price entails a disbursement by the company of $560,914.20 in excess of the pre-existent appraisal value. Nevertheless, it is the judgment of the president and board of directors of the company that the resultant advantages of the transaction vindicate the prudence of this expenditure. The desirability of the complete mutualization is emphasized. The company will be relieved of the current salaries and incidental expenses of the trustees of the policyholders. Certain litigation with stockholders, now pending, will be terminated. Then, too, the advantages of the present contractual arrangement are compared with the cost of the requisite services of officers, actuaries, accountants, attorneys and experts plus the additional expense to be inevitably incurred in undertaking to fashion a fresh appraisal value of the shares under the only alternative plan authorized by law.
The supplementary statute by which the present proceeding is governed contemplates that the proposed purchase price of the stock shall evolve from the negotiations of the company and the stockholder, each stockholder to receive the same price per share, and the statute ordains that if I shall find that the purchase of the stock at the agreed price can be made out of the surplus of the corporation and without impairing the rights of policyholders or of other stockholders or impairing the financial security of the corporation, an order shall *Page 178 
be entered by me approving the agreement and directing its performance.
Tersely stated, the evidence is that the company has total assets of approximately $4,500,000,000. The regular policy reserves amount to about $4,150,000,000. Additional funds held for the protection of policyholders including the capital stock of $2,000,000 aggregate $240,000,000. There is a free and unassigned surplus of approximately $80,000,000. The cost of the outstanding shares on the terms of the agreement is, expressed in percentage, about one per centum of this surplus.
In its relation to the interests of policyholders and to the financial security of the company, the agreement has been studied by the Commissioner of Banking and Insurance, by the Deputy Commissioner and by the department's actuary, all of whom testified that under the terms and provisions of the statute the agreement can be safely approved. The trustees of the policyholders through their counsel sanction the consummation of the agreement.
I conclude that the purchase of the stock at the agreed price can be made out of the surplus of the corporation without impairing the financial security of the corporation, and I shall make an order approving the agreement and directing its performance.