UNITED STATES TRUST CO. OF NEW YORK v. WOOD et al.

(Supreme Court, Appellate Division, First Department.   November 3, 1911.)

1. WILLS (§ 698*)—FOREIGN WILLS—JURISDICTION.

Where a foreign will was admitted to probate in New York, and a substituted trustee, who was seeking a discharge, was appointed by the New York courts, having charge of assets located there, and the lapse of time was so great as to remove any possibility that there were still creditors interested in the estate in the place of the decedent's domicile, the New York court in the exercise of its discretion, would assume jurisdiction to determine the validity of a bequest essential to final distribution by the substituted trustee.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 698.*]

2. CHARITIES (§ 2*)—CONSTRUCTION—VALIDITY—WHAT LAW GOVERNS.

Where testatrix was a resident of Connecticut, a bequest of the remainder of a trust fund to the bishop of Montana of the Protestant Episcopal Church, to be expended in the erection of a church in such a place in his diocese as he should select, must be determined by the laws of Connecticut.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 2; Dec. Dig. § 2.*]

Appeal from Special Term, New York County.

Action by the United States Trust Company of New York against Fannie Wood and others, impleaded with Leigh R. Brewer and others, to construe a part of the will of Jane C. Mallaby, deceased. From a decision at Special Term construing the will, Fannie Wood and others appeal. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

William D. Gaillard, for appellants.
C. S. Guthrie, for respondent.

DOWLING, J.   Jane C. Mallaby, a resident of Stonington, in the state of Connecticut, died June 17, 1876, leaving a last will and testament, which was admitted to probate by the Surrogate's Court of the county of New York, June 16, 1877, as a will of real and personal property, and letters testamentary thereon were duly issued to Luther Wright.   On December 24, 1904, in a proceeding brought in the Supreme Court, New York county, an order was made substituting plaintiff as trustee under said will, and it duly received the securities constituting the principal of the estate.   The present action is brought by the substituted trustee to have its account as such judicially stated, settled, and allowed, and for the direction of the court as to the disposition which should be made of the property in its hands.

The question now directly presented is the construction which is to be given to the last provision of the following paragraph of the will:

"Third. I further order that the interest of my Cleveland and Toledo railroad bonds Nos. 517, 518, 519, 520 and 521 as the same shall be collected, be paid over to my sister, Janette A. Smith, during her life, and after her decease I direct the interest to be paid to my niece, Sarah Jane Wood, until

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the bonds are redeemed in 1886. I direct further that the money received from them be placed in the Greenwich Savings Bank, New York City, and the interest paid to Sarah Jane Wood during the term of her natural life. At her decease I direct that the whole sum deposited in said Greenwich Savings Bank be paid over to the person who is then bishop of Montana of the Protestant Episcopal Church of the United States of America, to be expended in the erection of a church in such place in his diocese as the said bishop of Montana may select."

The appellants herein contend that the bequest to the bishop of Montana is invalid, under the common law both of New York and Montana. The respondent contends that, as the request was valid under the laws of the state of Connecticut, the place of domicile of testatrix, it will be enforced by the courts of this state.

[1] At the outset we are confronted with the query whether the court will take cognizance of this controversy at all, or will remit the parties to the determination of their rights in the state of decedent's domicile, to which the assets of the estate will be remitted for distribution. In Despard et al. v. Churchill et al., 53 N. Y. 192, it was said:

"The cases are not uncommon in which a testamentary disposition made in a foreign jurisdiction has controlled the transmission of personal property in this. Usually the administration of the estate has been committed by the will to citizens of that jurisdiction. They have acquired the possession and control of the property through voluntary payment or surrender, or, by making probate of the will here, have obtained auxilliary letters testamentary, and under these have enforced collection or surrender. In such case, those charged with the administration are liable to account here for the assets collected by the authority granted here. It seems to have been generally held that, where there are domestic creditors of the estate, payment of the debts may be decreed out of the assets. Dawes v. Boylston, 9 Mass. 337 [6 Am. Dec. 72]; Richards v. Dutch, 8 Mass. 506; Harvey v. Richards, 1 Mason, 381 [Fed. Cas. No. 6,184]. For other purposes, such as the payment of legacies and the distribution of the surplus to the next of kin, the courts in Massachusetts have held that the assets must be remitted to the place of domicile. See case above cited. But this has been questioned with great force and reason. See Harvey v. Richards, supra. And the better rule is that whether the courts of one state are to decree distribution of the assets collected in it under auxilliary letters granted by them, or to remit the disposition thereof to the courts of the testator's domicile, is not a question of jurisdiction, but of judicial discretion under the circumstances of the particular case. Harvey v. Richards, supra; Parsons v. Lyman, 20 N. Y. 103."

In the case at bar there seems to be ample reason for the court's exercise of its discretion and assuming jurisdiction. The fund is in this state, the substituted trustee was appointed by its court, it is seeking a judicial discharge from the trust reposed in it by that court, all the parties interested are invoking the action of the court, the will was originally probated here, and the lapse of time is so great as to remove any possibility of there still being creditors interested in the estate in the place of decedent's domicile. The determination of the validity of the bequest in question is necessary to the final distribution by the substituted trustee and the latter's discharge.

[2] Considering the merits of the appeal, therefore, we are of the opinion that the validity of the bequest to the bishop of Montana of the Protestant Episcopal Church must be determined by the laws of the state of Connecticut, the place of domicile of testatrix. In Dam-

mert v. Osborne, 140 N. Y. 30, 35 N. E. 407, where the will in question was that of a resident of Peru, the court said:

"At every stage of the inquiry pressed upon us by this appeal, it is important to keep in view a fundamental fact, established by uncontradicted evidence at the trial, and conceded upon the argument, and that is that the bequest to the Sevilla Home was perfectly valid by the laws of Peru, the domicile of the testator, which governed his personal property wherever it was at the time of his death. * * * The general principle that a disposition of personal property, valid at the domicile of the owner, is valid everywhere, is of universal application. It had its origin in that international comity which was one of the first fruits of civilization, and in this age, when business intercourse and the process of accumulating property take but little notice of boundary lines, the practical wisdom and justice of the rule is more apparent than ever. It would be contrary to the principles of common justice and right, upon which the rule is founded, to permit a testamentary disposition of personal property, valid by the law of the domicile, to be annulled or questioned in every other country where jurisdiction was obtained over the property disposed or the parties claiming it, except for the gravest reasons. There are, no doubt, some exceptions to the rule founded upon considerations of public policy and necessity. Foreign contracts or dispositions of property, which, if carried out, would endanger the public morals or the public safety, or undermine the political or social fabric, or subvert the administration of justice, or have other evil tendencies, are not within the rule, as the right and duty of self-preservation is higher and stronger in every community than any obligation found in comity. But the object of this bequest, instead of tending to such results, was highly laudable and commendable, and certainly there is no public policy that forbids its execution."

Upon the reargument of that case the court said further (141 N. Y. 564, 35 N. E. 1088):

"We think that none of the cases referred to hold that a valid disposition of property at the domicile of the owner may be declared void by the tribunals of another country, where the law is different, and the title adjudged to be another. The contrary was held in the case of Cross v. United States Trust Company, 131 N. Y. 342 [30 N. E. 125, 15 L. R. A. 606, 27 Am. St. Rep. 597]. * * * The fundamental error that pervades all the reasoning of the learned counsel on this subject is to be found in the assumption that the courts of this state can annul a disposition of personal property in a foreign will, valid by the law of the domicile, and distribute the property to claimants here, contrary to the terms of such disposition as interpreted by the law under which it was made. No controlling authority can be found in support of such a proposition. When our courts cannot give effect to testamentary dispositions of property in foreign wills without violating our laws or public policy, the property should be remitted to the jurisdiction of the domicile, to the end that it may administer its own laws. But if there is no law or public policy here that forbids the execution of the purpose that the testator had in view, then our courts will give effect to the disposition according to the law under which it was made."

It is conceded that under the laws of the state of Connecticut the bequest in question is a valid one. Pendleton v. Kinney, 65 Conn. 229, 32 Atl. 331; Woodruff v. Marsh, 63 Conn. 125, 26 Atl. 846, 38 Am. St. Rep. 346; Eliot's Appeal, 74 Conn. 586, 51 Atl. 558.

It follows that the judgment appealed from should be affirmed, with costs to respondent. All concur.