James H. Griswold and Otto H. Jobski, as special co-administrators of the estate of Richard S. Bryant, deceased,

*v.*

Kelly-Springfield Tire Company et al.

[Submitted July 26th, 1916. Decided August 22d, 1916.]

1. Where a resident of Ohio executed his will in New York and died there, and the will was offered for probate in New York, and contested there, upon which a temporary administrator was appointed in New York, and the probate court of Ohio also appointed administrators, who filed their bill in this court to obtain certain certificates of stock in a New Jersey corporation, owned by the testator, but physically in New York, and to procure their transfer by the New Jersey corporation, the ownership of the stock not being in dispute, this court will not interfere between the rival claimants and settle the lawful right of possession.

2. It must be assumed that courts of sister states will try issues according to the rules of law, and will decide them upon the facts, applying correct principles, and the courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction over the courts of another state.

3. Personal property in a foreign jurisdiction will devolve according to the laws of the domicile.

---

On bill, &c.

Note.—This case was omitted by inadvertence from the New Jersey Equity Reports at the time the opinion was rendered.—Rep.

*Mr. William H. Wurts* and *Mr. Nash Lockwood* (of the New York bar), for the complainants.

*Messrs. McCarter & English, Messrs. Stein, Stein & Hannoch* and *Mr. Lewis M. Scheuer* (of the New York bar), for the defendants.

BACKES, V. C.

Richard S. Bryant at the time of his death; was a citizen of and domiciled in Cleveland, Cuyahoga county, Ohio. He died at the Post Graduate Hospital in New York city January 23d last, where he had gone for treatment. Shortly before his death, and while in New York, he executed a last will and testament wherein he appointed Arnold L. Scheuer and Otis R. Cook his executors. He left a mother and three brothers as his next of kin, who are dissatisfied with the provisions of the will. The executors offered the will for probate in the surrogate's court of the county of New York, and pending contest by the next of kin the surrogate appointed Arnold L. Scheuer, one of the executors, temporary administrator. Later the domiciliary court, the probate court of Cuyahoga county, Ohio, appointed the complainants special administrators. At the time of his death Mr. Bryant was the owner of five hundred and fifty shares of the common stock of the Kelly-Springfield Tire Company, a New Jersey corporation. The certificates for these shares, six in all, were made out in the name of H. P. Goldschmidt & Company and endorsed on them was a blank power of attorney for their transfer, executed by Goldschmidt & Company. The certificates were found in Mr. Bryant's strong-box at the Plaza Hotel, New York city. where he had been stopping, and were taken charge of by the New York administrator, who has been ordered by the surrogate to sell them at not less than their appraised value. The probate court of Ohio has ordered the special administrators to demand the certificates and to take whatever legal action may be necessary to secure the transfer of the stock to them upon the books of the company. Upon a demand and refusal, this bill was filed to compel the Kelly-

Springfield Tire Company to make the transfer, the New York administrator being joined as a party.

The complainants lay claim to the capital stock on the legal fiction *mobilia sequntur personam,* and having filed an exemplified copy of their letters it will be assumed that they are authorized to sue for the same in this state. *Comp. Stat. p. 2265 § 21.* If the ownership of the stock were involved in this suit—the property having its location in this state—this court, properly, would settle the title. *Andrews v. Guayaquil and Quito Railway Co., 69 N. J. Eq. 211; affirmed, 71 N. J. Eq. 768; Sohege v. Singer Manufacturing Co., 73 N. J. Eq. 567; Amparo Mining Co. v. Fidelity Trust Co., 74 N. J. Eq. v97; affirmed, 75 N. J. Eq. 555.* Here the title is not in dispute. The ownership of the stock is in the estate of Richard S. Bryant, and the strife between the two sets of administrators is simply for the privilege of administering the stock for the estate. Both claimants are only custodians of the court of their appointment (*Davenport v. Davenport, 68 N. J. Eq. 611*) and the real issue raised is whether the New York surrogate's court has jurisdiction to impound the certificates and sell the stock —a problem which, as between the two tribunals, under the circumstances of this case, ought to be left to that court to solve.

The proposition that the *situs* of capital stock is in the state where the corporation was created, and that the certificates of stock are generally regarded as mere evidence or muniments of title, is not controverted. *Neilson v. Russell, 76 N. J. Law 27;* reversed on other grounds, *76 N. J. Law 655; Buck v. Beach, 206 U. S. 392; Kennedy v. Hodges, 215 Mass. 112; Richardson v. Busch, 198 Mo. 174; Gamble v. Dawson, 67 Wash. 72; 29 Ann. Cas. 1913 D 501.* But for some purposes the certificates themselves have many of the qualities and attributes of personal property. They are bought and sold on their face and title passes by delivery. They are deemed personal property when pledged to secure debts and may be levied upon by virtue of writs of attachment and of execution. They are thus regarded by the courts

of the State of New York. In *Simpson* v. *Jersey City Contracting Co., 165 N. Y. 193,* the plaintiff attached capital stock of a foreign corporation, which the defendant had pledged as security for the payment of a note. In its advisory opinion the court of appeals held that the pledge of the certificate carried with it the owner's interest and that the owner's residuary right as against the pledgee was seizable for the debt. Justice Gray in delivering the opinion said: "Did it [the defendant] not, therefore, clearly have property rights, or interests, within this state, which could be impounded by our courts to abide the result of the litigation over the plaintiff's claim? I think so. The distinctions sought to be drawn are, largely, artificial. The truth is that it did have property here, in the common acceptation of the terms as well as in the eye of the law. Certificates of stock are treated by business men as property for all practical purposes. They are sold in the market and they are transferred as collateral security for loans, and they are used in various ways as property. They pass by delivery from hand to hand and they are the subject of larceny." See *In re Whiting, 150 N. Y. 27.* Commenting on this case, Mr. Cook, in his work on *2 Corp. (6th ed.) 1272,* says:

"It must be admitted that this decision, although apparently a wide departure from the common law, is a correct decision, in view of the fact that the certificates of stock have gradually grown to be more than mere receipts or evidence of stock, and have come to be the stock itself, practically, in business transactions, especially in America, and, like a promissory note, a certificate of stock is property in itself and carries title, irrespective of the corporate books and of transfer on the corporate books. The decisions on this subject may perhaps be reconciled on the ground that where the words of the statute are broad enough to allow an attachment to be levied on certificates of stock such a levy is effective, inasmuch as certificates of stock now represent value in themselves, in very much the same way as promissory notes."

In *People* v. *Grifenhagen, 152 N. Y. Supp. 679,* the sheriff of New York county was *mandamused* to sell capital stock of a foreign corporation, the certificates of which he had levied on by virtue of an execution. The certificates had

been delivered by the defendant to a local bank for the
purpose of having them sold. The court held that the cer-
tificates of stock were personal property within the statutory
definition contained in section 39 of the General Construction
law, hereinafter quoted, and upon the authority of *Simpson*
v. *Jersey City Contracting Company,* concluded that "If the
interest of a non-resident owner. in the capital stock of a
foreign corporation, which is pledged as security for a debt
within this jurisdiction, is subject to the levy of an attach-
ment, I fail to see upon what principle the stock in question
was not subject to the levy of the attachment. Here the
bank had no lien, but it had possession, with authority to sell,
and by the assignments executed in blank by the owner the
purchaser would become entitled to have the stock transferred
to his name on the books of the company in the foreign
jurisdiction."

*2 Schou. Wills (5th ed.) 901,* says:

"Modern kinds of incorporeal personal property furnish disputes as
to their locality for such a purpose (probate jurisdiction), which the
courts have not as yet clearly settled. But where the personal prop-
erty consists of a debt.owing upon some security or document of
title, which of itself is commonly transferrable as possessing a mer-
cantile value, the local situation of such security or document of
title would, in various instances, be well held to confer a probate
jurisdiction, as of *bona notabilia,* apart from the obligor's or
debtor's place of residence; as where, for instance, a savings-bank
book, coupon-bond, certificate of stock, or perhaps a promissory note
were left lying in another jurisdiction."

Of course a distinction may be drawn between the two
New York cases and the present one, in that in both it may
be said the owners of the certificates voluntarily carried their
*interest* in the stock, as well as the certificates, into the New
York jurisdiction, while here they were there casually. But,
there is an element in this case which, perhaps, as effectu-
ally attaches the New York probate. jurisdiction. At his
death Mr. Bryant was heavily indebted to citizens of that
state, and for their. protection its courts undoubtedly have
the right to sequester property of a deceased non-resident to
insure the payment of the debts, and to this extent and for

this purpose, at least, it may be held by the New York courts that the deceased brought not only the certificate, but his interest in the stock within their jurisdiction. Under the code of court procedure of New York the * * * surrogate of each county has exclusive jurisdiction to grant letters testamentary or of administration where the decedent not being a resident of the state dies within that county, leaving personal property within the state. *Code Civ. Pro. 2515 (Am'd. 1914)*. By paragraph 39 of its General Construction law *(Cons. L. 1909 c. 27)*, personal property is defined to include

"chattels, money, things in action and all written instruments themselves, as distinguished from the rights or interests to which they relate, by which any right, interest, lien or encumbrance in, to, or upon the property, or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, wholly or in part, and everything, except real property, which may be the subject of ownership."

All of the parties in interest—the executors, devisees and next of kin of the deceased—are now before the surrogate's court of New York contesting the will and debating the question of jurisdiction. In this situation and the condition of the probate law, it would be manifestly inappropriate to pass judgment upon a matter with which we have no concern—there are no creditors of the deceased in this state—and it is, it seems to me, our duty to permit the surrogate's court to exercise its judicial functions in respect of the matters before it, unhampered by this suit. Furthermore, the rights of the parties ultimately to be benefited in the distribution of the decedent's estate, whether it be under his will or as of intestacy, are of paramount importance and those rights ought not to be jeopardized or sacrificed by needless litigation. If the surrogate's court upholds its own jurisdiction, its administration and sale of the capital stock will not be objectionable and the Kelly-Springfield Tire Company would be justified in making a transfer upon its books to the purchaser; or (the company having a transfer office in the city of New York) as was done in *Lockwood* v.

*U. S. Steel Corporation, 209 N. Y. 375,* the New York courts could compel such transfer; whereas, if an injunction should go in this case, the procedings in the surrogate's court might be rendered altogether abortive, or, if it would not have that effect, it would at least put such a cloud on the title of the stock as to render it unmarketable or salable only at a greatly depressed figure below its market value. The stock is of a fluctuating value, and a sale under the order of the surrogate's court at this time would result in advantage to the estate, regardless of those who may eventually share in its proceeds, and in view of the fact that both parties assert that an immediate sale ought to be had, there is no reason for our interference with the squabble between the two temporary administrators as to which of them should make the sale.

The grounds for relief and the reasons assigned by the complainants in their bill, why they should primarily control the stock and be permitted to sell it, are not of a nature sufficient to influence a court of equity to intervene in their behalf. After stating that the last will and testament of the deceased was obtained by fraud and duress and that its probate is being opposed in the surrogate's court on the grounds of mental incapacity and undue influence, and that its admission will be contested in the Ohio courts on the same ground if it is offered there for probate, they allege: (1) That in the event of the will being admitted to probate in New York and rejected in Ohio, the executors will distribute the proceeds of the sale of the stock in accordance with the terms of the will and not to the next of kin entitled to it under the intestate laws of the domicile; and (2) argumentatively, that if the will is rejected, the distribution would be made according to the intestate laws of the State of New York, and not in accordance with those of Ohio; and, further, that irreparable injury will be done the Ohio administration if the New York administrator and not the Ohio administrator should sell the stock, because in that event (*a*) the State of New York would exact an inheritance

tax, and (b) that the New York administrator would be allowed a commission.

(1) As to the first ground: It is to be assumed that the surrogate's court will try the issues according to the rules of law and will decide them upon the facts, applying correct legal principles, in the same manner as it is to be assumed the Ohio court would try and decide them. Chancellor Pitney, in *Bigelow* v. *Old Dominion Copper Mining and Smelting Co.*, 74 N. J. Eq. 457 (at p. 473), expressed the proper sentiment in this manner: "The courts of New Jersey ought not to assume, directly or by indirection, any appellate jurisdiction over the courts of Massachusetts, nor proceed in giving judgment here upon the idea that the courts of that commonwealth are in the least degree incompetent or unwilling to do full and complete justice in all cases that are fairly within their jurisdiction." If, perchance, however, different conclusions were reached, which is only remotely possible, and a part of the testator's estate in case of probate, would pass under his will, and the remainder located in another state would pass by operation of law of that state, while unfortunate, would lead to no confusion or conflict, for the reason that the judgment of the respective courts would be operative only upon the property found within its own jurisdiction. And, in this respect and upon this aspect of the case, it must be further assumed that if the capital stock was property in New York, upon which the jurisdiction of the surrogate's court fastened for the purpose of satisfying the claims of its citizens and not such for testamentary purposes generally, the court will so adjudge and will distribute the surplus according to the laws of the domicile or remit it to the domiciliary court for that purpose, as would be done under the laws of this state if a nonresident died testate leaving property in this state, and having resident creditors. Here, unlike the practice in New York, our probate courts have not original jurisdiction, and probate is granted only as ancillary to that of the courts of the domicile (*Chadwick's Case, 80 N. J. Eq. 471*), but our courts nevertheless administer regardless of the will, and

after satisfying local debts, turn the balance over to the home administrator.

(2) The feebleness of the second ground is so apparent that little need be said. The law is well settled that in case of intestacy, personal property in a foreign jurisdiction will devolve according to the laws of the domicile; and it is to be taken for granted that if the surrogate's court should declare that Mr. Bryant died without leaving a will, it will, after satisfying debts, distribute the estate according to the laws of Ohio or transmit it to the home representative. Whether it will do the one or the other is a matter not of jurisdiction, but of judicial discretion, depending upon the particular circumstances of each case. *Harvey* v. *Richards, 1 Mas. 380; U. S. Trust Co.* v. *Wood, 146 App. Div. 751; Normand* v. *Grognard, 17 N. J. Eq. 425.*

(*a*) There is no basis for relief on the score of irreparable injury. There is nothing before me to show that an inheritance tax can or will be exacted by the State of New York. On the contrary, my understanding is that none can be assessed.

(*b*) The fact, if it is a fact, that the New York administrator will be allowed commissions is not a cause for complaint. A reasonable compensation awarded by courts to their officers is a necessary incident to the administration of justice, and it may safely be left to the courts to guard against an overburden. If the services in this case which the complainants desire to render the estate are performed by the New York administrator and the hire is paid to him, the domiciliary court, it is to be assumed, will not grant a second commission unless it is constrained to do so by statute, and in that event the complainants may relieve themselves from their present anxiety by, in a spirit of unselfishness, declining the allowance.

An injunction will be denied and the bill will be dismissed, with costs.

---

NOTE.—Chapter 283, laws of 1921 (*P. L. p. 831*), confers jurisdiction on our courts to probate wills of non-residents, under certain circumstances, where the decedent was seized of land in this state. —REP.