This bill is to compel the United States Steel Corporation to transfer on its books and certify to the complainant five hundred shares of its stock now outstanding in the name of Shearson, Hammill Company, New York stockbrokers, represented by fifty ten-share certificates, serially numbered, each having thereon, duly endorsed, an assignment in blank, with power to transfer. The Public Trustee of England holds the certificates, they having been seized as enemy property during the war, and he prays by answer (it should be by counter-claim) that the shares be transferred to him.
Before the outbreak of the world war, the complainant, then, and ever since, a citizen and resident of Germany, gave an order to his banker, A. Schaaffhausen'scher Bankverein, of Cologne, Germany, to buy five hundred shares of the stock of the steel company; and he paid for them. The Bankverein negotiated the purchase with the Dresden Bank of Germany and the order was filled in London by its London branch. When England declared war with Germany, securities in the London branch, running into millions, were seized as enemy property, and among them were certificates for upwards of five thousand shares of the steel company, mostly, if not all, in ten-share units, made out to various persons and concerns with blank assignments duly endorsed. None of the certificates was earmarked as the property of any particular customer. The London branch always had on hand certificates equal to its customers' purchases, and deliveries were made without discriminating selection. After the seizure, the London branch, in reporting its enemy-held securities to the English custodian, listed six hundred and sixty shares of the *Page 508 
steel company stock as held for its customer, A. Schaaffhausen'scher Bankverein, and the board of trade, in the exercise of the powers conferred on it by the Trading with the Enemy Amended act of 1916, by order dated July 31st, 1917, vested the title to all the securities so captured in the Public Trustee (custodian of enemy property) — the six hundred and sixty shares as the property of the Bankverein, an alien enemy. The legality of the order as a medium of transfer of title is not disputed; its operation on the shares in question is denied. Complainant's position is that at the time of the seizure he was in Germany and his property in the shares was in New Jersey, the domicile of the steel company; that the thing seized in England was nothing more than the evidence of his shares in the property, and consequently that the vesting order did not divest him of his title.
It is generally accepted that a certificate, without more, is only a muniment of title to shares in corporate property, and, passively, in the hands of the registered holder, is merely evidence of the reciprocal rights, duties and obligations of the holder and the corporation and of stockholders inter sese; that the property represented by the certificates is at the domicile of the corporation, and that such rights, duties and obligations are determined by the laws of the domicile, and as against the corporation are determinable by the domiciliary courts.Jellenik v. Huron Copper Mining Co., 177 U.S. 1; Plimpton v.Bigelow, 93 N.Y. 592; Andrews v. Guayaquil and Quito RailwayCo., 69 N.J. Eq. 211; affirmed, 71 N.J. Eq. 768; Amparo MiningCo. v. Fidelity Trust Co., 74 N.J. Eq. 197; affirmed, 75 N.J. Eq. 555; United Cigarette Machine Co. v. Canadian PacificRailway Co., 12 Fed. Rep. (2d ser.) 634. The doctrine that certificates of corporate stock are but evidence of ownership is not, however, inconsistent with the concept that an assignment and delivery of the certificate carries the title and property in the shares, especially of those put in circulation and current in the market and sold at face value, passing in trade from purchaser to purchaser upon delivery without registration. That "street name" certificates, those made out to brokers, as were the ones now claimed by the complainant, take on all the elements of *Page 509 
property and pass the title to the shares by delivery is common understanding. They, and others that have not that distinction, are pledgable as security; they are subject to local laws of administration of decedents' estates, where found (Griswold v.Kelly-Springfield Tire Co., 94 N.J. Eq. 308), and to levy and sale under execution of foreign jurisdictions when there negotiated. Simpson v. Jersey City Contracting Co., 165 N.Y. 193; People v. Grifenhagen, 152 N.Y. Supp. 679. Mr. Cook approves the doctrine of the Simpson Case, and of it he says: "It must be admitted that this decision, although, apparently, a wide departure from the common law, is a correct decision, in view of the fact that certificates of stock have gradually grown to be more than mere receipts or evidence of stock, and have come to be the stock itself, practically, in business transactions, especially in America, and, like a promissory note, a certificate of stock is property in itself and carries title irrespective of the corporate books and of transfer on the corporate books. The decisions on this subject may perhaps be reconciled on the ground that where the words of the statute are broad enough to allow an attachment to be levied on the cerificates of stock such a levy is effective, inasmuch as certificates of stock now represent value in themselves, in very much the same way as promissory notes." Cook Corporation (6th ed. p. 1272). The "Uniform Stock Transfer act" of 1916 (Cum. Stat. p. 599) adds additional qualities. That act is, however, prospective and consequently inapplicable here. The certificates of the United States Steel Company in ten-share units were commodities in the stock market in London, handled by broker after broker for customers without registration, and are held by the law of England to be property there, and were undoubtedly so regarded by the complainant when he made his purchase. The thing that was assigned to or for him was the intangible property rights; that which was delivered to the branch bank testified the ownership. There is considerable contrariety of opinion in the books as to the legal quality of stock certificates, but the question here presented, that of ownership of United States Steel Corporation "street name" certificates seized by *Page 510 
the English custodian as alien property, German owned, and ordered vested in the Public Trustee, was passed upon and definitely settled in Direction der Disconto-Gesellschaft v.United States Steel Corp., 267 U.S. 22, where Mr. Justice Holmes, in affirming the lower court which had held the certificates seizable property in England, said: "New Jersey having authorized this corporation like others to issue certificates that so far represent the stock that ordinarily at least no one can get the benefits of ownership except through and by means of the paper, it recognizes as owner anyone to whom the person declared by the paper to be owner has transferred it by the endorsement provided for wherever it takes place. It allows an endorsement in blank, and by its law as well as by the law of England an endorsement in blank authorizes anyone who is the lawful owner of the paper to write in a name, and thereby entitle the person so named to demand registration as owner in his turn upon the corporation's books. But the question who is the owner of the paper depends upon the law of the place where the paper is. It does not depend upon the holder's having given value or taking without notice of outstanding claims but upon the things done being sufficient by the law of the place to transfer the title. An execution locally valid is as effectual as an ordinary purchase. Yazoo and Mississippi Valley Railroad Co. v.Clarksdale, 257 U.S. 10. The things done in England transferred the title to the Public Trustee by English law." That case is not distinguishable in principle from the one in hand, as the complainant contends, because one of the plaintiffs in that suit had a branch bank in London where its certificate was found and the other had pledged its certificate with a London bank. These features, although cumulative, were extrinsic of the opinion. Each of these additional reasons, however, commit the complainant to the decision, for, if he was, in fact, the legal owner of the certificates, and we should agree with him to the extent that ordinarily they are regarded as only evidence of title, then, according to the same legal fiction, that personal property follows the owner, which he contends moved the supreme court to its conclusion as to one of the plaintiffs, the certificates *Page 511 
must be held to be property in London, for he had them there in the hands of his agent; and if he was not the owner but had a mere equity in the shares and the right to recover them or their value, then his cause for action had a situs in London and the certificates were the proper subject of capture, entirely consonant with the reason he claims influenced the court in its decision as to the other plaintiff.
Furthermore, the title to the shares seized was primarily in the Dresden Bank. Upon allocation, title to some of them was recognized by the custodian as being in the bank's customer, A. Schaaffhausen'scher Bankverein, an alien enemy, and condemned as its property. The complainant's interest at that time was purely equitable and latent. It was not until after the title of the Bankverein had passed to the Public Trustee under the vesting order that the Bankverein allotted to the complainant the shares he now claims; in all probability to relieve itself of responsibility and instate the complainant as a claimant against his government for indemnity under the treaty of Versailles. But be that as it may, the vesting order transferred the title of the Bankverein to the Public Trustee unaffected by the latent equity of the complainant.
The title of the Public Trustee was moreover confirmed by article 297, section 4, part 10, of the treaty of Versailles, which recognizes the validity of war measures and measures of transfer taken by the allies or associated powers, and reserves to the powers the right to retain and liquidate seized property and declares that the seizures made by them are final and binding. It is argued that the treaty cannot be entertained. While it is true that this government is not a party to that instrument and it is not treaty law with us, yet its binding force on the parties to it may be judicially recognized and given effect the same as any other lawfully existing contract.
The prayer of the bill is denied. Upon filing of a proper counter-claim the United States Steel Corporation will be ordered to register the shares in the name of the Public Trustee or his nominee and issue a certificate or certificates at his election. *Page 512