CHARLES LASK, respondent,

*v.*

BEDELL, INCORPORATED, appellant.

[Decided March 1st, 1920.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Lane, who filed the following opinion:

The facts, as I find them, are as follows: On March 1st, 1918, complainant loaned one Corcoran $2,000 for the purpose of enabling Corcoran to acquire an interest in the stock of Bedell, Inc., a corporation; the loan was evidenced by a note dated March 1st, 1918, made by Corcoran to Lask, which note is unpaid. Corcoran, at the time of the advance, assigned to complainant, as collateral security for the payment of the note, "fifty per cent. of my (holdings) stock, preferred and common, in the Bedell, Inc., of Paterson, N. J., to be held in payment of note issued to him by Charles Lask until same is paid by me, for value received." Previous to this, and on February 16th, 1918, the then holders of the capital stock of Bedell, Inc., had agreed to sell the stock to Corcoran and simultaneously therewith Corcoran had assigned his interest in that contract to Levay & Friedberg, the people who were putting up the money. On February 25th an agreement had been entered into between Corcoran and Levay & Friedberg, under the terms of which Corcoran was to invest in the concern $2,000, payment to be made March 1st, 1918; Levay & Friedberg were to invest $18,000; the stock of Bedell, Inc., was to be increased; Corcoran was to receive $2,000 in common and $2,000 in preferred of such stock. On February 26th, 1918, the transaction between the owners of the then existing stock of Bedell, Inc., and Corcoran and Levay & Friedberg was consummated. Ninety shares of the then existing stock (there being one hundred in all) was issued to

Levay & Friedberg, and ten shares to Corcoran; the certificates were never actually delivered, but Corcoran was thereafter recognized as a stockholder; on May 4th, 1918, after a certificate had been filed increasing the capital stock from $10,000 to $40,000, one-half common, the other half preferred, a meeting of the stockholders and directors were held, at which meeting there is recited to have been present, Abraham Levay, forty-five shares; Abraham Friedberg, forty-five shares; John J. Corcoran, ten shares; at that meeting there was authorized the issuance to Levay & Friedberg, or their designee, of $39,000 in stock, and Levay & Friedberg, at the same meeting, directed the corporation to issue, of the stock, two hundred shares common and two hundred shares preferred to Corcoran. The consideration for the issuance of the increased stock was an indebtedness due from the corporation to the owners of the old stock, which indebtedness Levay & Friedberg, as individuals, had purchased. Stock certificates were actually drawn up, but were not, in fact, delivered, for the reason, as stated, that Friedberg went on the road and the papers were left with Meyers, the attorney. Friedberg testified that if the defalcation hereinafter mentioned had not occurred, he judged that the stock would have been delivered to Corcoran. Corcoran, on May 4th, 1918, was appointed general manager. A provision of the by-laws required that the general manager should give a suitable bond. No bond was given or exacted. In August Corcoran absconded and fled the state. Prior to his going he wrote a letter to Friedberg, advising him of the condition of affairs, and also a letter to Lask, enclosing in the letter to Lask an instrument, which reads as follows:

"July 3, 1918.

"To Whom it may Concern:

"I hereby assign 200 shares of preferred and 200 shares of common stock of Bedell, Inc., Paterson, N. J., for the consideration of one dollar and other valuable consideration to Mr. Charles Lask of No. 159 Madison Ave., New York City, N. Y. I also give Mr. Lask power of attorney with regard to the above mentioned holdings. Signed this 3rd day of July, 1918."

The assignment was antedated by Corcoran. No notice was given to the corporation, either of the assignment of March or

of the last-mentioned assignment, until after the defalcation. The bill makes party defendant only Bedell, Inc., and prays that complainant may be adjudged to be the owner and entitled to the immediate possession of the shares of stock; that defendant be decreed to forthwith issue such shares and that complainant have such other and further relief as may be proper. The claim of defendant is, that the stock was not delivered to Corcoran because, under the by-laws, it was provided that a bond should be exacted and the stock was held by defendant in lieu of the bond. On the trial defendant insisted, in addition, first, that the stock had not been issued and that Corcoran had merely a chose in action against the corporation, and that the assignee of such chose in action took it subject to any equity of defendant, and that defendant was entitled to offset against the claim of the assignee its claim against Corcoran for the amount embezzled, in the neighborhood of four thousand dollars; second, that it had a lien upon the stock for the amount due to the corporation from Corcoran.

I will deal, first, with the contention made in the answer.

1. There is no evidence that any arrangement was made whereby the stock was to be held by the corporation in lieu of the bond. No agreement on Corcoran's part that it should be so held was shown. Both he and Friedberg were witnesses and no attempt was made to prove an agreement either that the stock should be held by the corporation in lieu of the bond or that the stock should be held to answer any claims the corporation might have against Corcoran.

2. If the stock was, in fact, issued, although the certificates had not been delivered, then I fail to see upon what theory the corporation can offset against the claim of the assignee to the possession of the certificates, and to have such entry made upon the books of the corporation as will evidence his rights, any claim that the corporation may have as against Corcoran. It is the recognized law of this state that the certificate of stock is merely evidence of ownership, and that there need not be a certificate issued and delivered to vest a person with the rights of a stockholder. *Storage Company* v. *Assessors, 56 N. J. Law 389; Warren* v. *Pim, 66 N. J. Eq.* (at *p. 351*), citing *Downing* v. *Potts,*

*23 N. J. Law 66, 79; Bijur* v. *Standard Distilling and Distributing Co., 74 N. J. Eq.* (at *p. 556*); affirmed on opinion below, *78 N. J. Eq. 582; N. Y. & East. Tel., &c., Co.* v. *Great East. Tel. Co., 74 N. J. Eq.* (at *p. 230*); affirmed on opinion below, *75 N. J. Eq. 297; Fidelity Trust Co.* v. *Federal Trust Co., 100 Atl. Rep.* (at *p. 619*). The question is whether, in fact, the stock was issued. In *Wolcott* v. *Waldstein, 86 N. J. Eq. 66*, cited by defendant, the holding of Vice-Chancellor Leaming was based upon the fact that the transaction under which the stock was to be issued was never, in fact, consummated. In *Fidelity Trust Co.* v. *Federal Trust Co., supra,* I held, although there were no stock certificates issued or book entries, that the transaction had been ·consummated and that James Smith, Jr., had become a stockholder. In the case at bar, the transaction under which the stock .was to be issued was consummated. Corcoran had paid his $2,000. The debt due from the corporation to the holders of· the. old stock, taken by assignment by Levay & Friedberg, had been surrendered. The corporation had directed the issuance of the stock to Levay .& Friedberg, or their nominees; Levay & Friedberg had directed the corporation to, in fact, issue two hundred shares of common and two hundred shares of preferred to Corcoran, who had, as above stated, paid the full consideration therefor. The certificates were drawn up and nothing remained to be done except the physical delivery of the certificates. This delivery was not withheld because of any agreement. The stock was not put in escrow. The delay in delivering was due to the absence of the parties.

I am convinced, therefore, that it must be considered in this case that Corcoran at the time of the defalcation was, in fact, a stockholder of the corporation to the extent of two hundred shares of common and two hundred shares of preferred. If this be so, then, in any action of the assignee of Corcoran to enforce his rights in the corporation, or to compel the corporation to recognize him as a stockholder, the corporation cannot set up or offset its demand against Corcoran, the act of the officers of the corporation in delivering the certificates and making the entries upon the books being purely ministerial.

3. Defendant claims a lien upon the stock and counsel for defendant cites, in support of his proposition, *Hammond & Co.* v. *Hastings, 134 U. S.* (at *p. 401*) ; *33 L. Ed. 960.* That case, as a casual inspection will show, was based on a statute of Michigan giving a lien. The law is well settled that in the absence of statute or by law or agreement a corporation has no lien upon the stock of a stockholder for a debt due from the stockholder to the corporation. *23 Am. & Eng. Encycl. L. (1st ed.) 689; Drexel* v. *Long Branch Gas Light Co., 3 N. J. L. J. 250; Young* v. *Vough, 23 N. J. Eq. 325; 7 Rul. C. L., tit. "Corporations"* § *177.* Counsel also cites *McIlroy Banking Co.* v. *Dickson (Supreme Court of Arkansas), 50 S. W. Rep. 868.* It appears that the ruling in that case was based upon a statute. The brief of defendant was prepared and filed by New York counsel. Under a statement of counsel that the authorities are clear, to the effect that a corporation is entitled to a lien on stock of stockholders who have embezzled money of the corporation, excerpts from the opinions of the courts in the two last-cited cases are quoted. There is omitted any reference to the fact that both cases were decided upon statutes. A cursory examination of the cases would have indicated that they cannot be considered in anywise as authority for the proposition advanced by counsel. The courts in this jurisdiction are not accustomed to having cases cited to them in a misleading manner. The courtesy usually extended to counsel from New York to appear in cases in this court will not be extended by me to counsel engaged in this case until his conduct shall have been, if it can be, satisfactorily explained.

Complainant, therefore, is entitled, in my judgment, to a decree compelling the corporation to issue the stock to him, and to make such entries on the books as will evidence ownership in him. The jurisdiction of equity, I think, is indicated by the following cases: *Morris* v. *Hussong Dyeing Machine Co. et al., 81 N. J. Eq. 256* (at *p. 261*) ; *Reilly* v. *Absecon Land Co., 75 N. J. Eq.* (at *p. 74*) ; *Archer* v. *American Water Works Co., 50 N. J. Eq. 33, 50; Lockward* v. *Evans, 88 N. J. Eq. 530.* In this case it is apparent that the dispute between the parties would have to be settled in this court because of the alleged equitable claims on the part of defendant. While the bill is apparently based

upon the theory that Corcoran had a right of action against the corporation to compel the corporation to issue the stock to him, yet there is a prayer for general relief. No objection has been made to the pleadings and the case has been fully heard. I think relief, therefore, may be granted upon the facts as I find them. Complainant is not bound or prejudiced by the position he takes in his bill, as he had no knowledge, at the time he filed it, of the actual conditions.

I do not think, however, that a decree should be made until Corcoran is made a party defendant. The assignment made by Corcoran to Lask is as collateral security. I think the corporation is entitled to his presence in the suit. That he is a proper party was held by Vice-Chancellor Emery in *Morris* v. *Hussong Dyeing Machine Co., supra.* That he may, if necessary, be brought in by publication is settled in *Andrews* v. *Guayaquil and Quito Railway Co., 69 N. J. Eq. 211; affirmed, 71 N. J. Eq. 768.* I will withhold the signing of a decree until he is brought in.

*Mr. William Hauser,* for the respondent.

*Mr. Wood McKee,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Lane.

*For reversal*—None.