Complainant Edward Maxson, on January 3d 1931, caused a writ of attachment to be issued out of the supreme court directing the sheriff of the county of Essex to attach the rights and credits, moneys and effects, goods and chattels, lands and tenements of one Charles Burnham Squier, a non-resident of this state, to make the sum of $46,081.05, representing an indebtedness of said Squier to said Maxson, and divers proceedings were had thereon, with respect thereto, resulting in the entry of a judgment on June 8th, 1931, in favor of Maxson and against Squier, upon which judgment a writ of execution issued by virtue whereof said sheriff sold to George C. Warren, Jr., one of the complainants herein, *Page 317 
all of the right, title and interest of said Squier as a stockholder of the New Jersey Zinc Company, one of the defendants herein, evidenced by a certificate representing shares of the capital stock of said company, a domestic corporation, standing in the name of said Squier on the books of said company. The sheriff, in said attachment proceedings, did not obtain physical possession of Squier's stock certificate. On January 5th, 1931, said Maxson, auxiliary to the issue of the aforesaid writ of attachment, filed a bill of complaint in this court against Squier, praying an injunction enjoining and restraining him from transferring certificates representing shares of the capital stock of the New Jersey Zinc Company standing in his name as owner on the books of said company, and on said date an order was made by this court requiring said Squier to show cause, at a time and place therein stated, why he should not be restrained and enjoined according to the prayer of said bill, and pendentelite from transferring or from permitting the transfer of such certificates of stock. Thereafter, by orders of this court, the return day in the aforesaid order to show cause was extended from time to time, and by order dated April 22d 1931, was extended and made returnable on May 25th, 1931. The order of April 22d 1931, provided for service upon Squier of a copy of said order, a copy of the bill of complaint and a copy of the order of January 5th, 1931, all of which in the manner provided by said order. Such proceedings were had in said cause that on May 25th, 1931, the day to which the aforesaid order of April 22d 1931, was extended, an injunction was granted as prayed by the complainant Maxson, which injunction is still in force and effect. The defendant Squier did not enter an appearance in said suit, although copies of the aforesaid orders and bill of complaint were served upon him as directed by the court. Such service is evidenced by proofs filed herein. A decree pro confesso was entered against the defendant Squier on said bill. On November 2d 1931, the complainants George C. Warren, Jr., and Edward Maxson filed their bill of complaint in the case sub judice
praying inter alia that the New Jersey Zinc Company be *Page 318 
ordered, upon presentation to it of a bill of sale or other transfer by the sheriff of Essex county to complainant George C. Warren, Jr., of the shares of stock mentioned in said bill, to transfer said shares to said Warren, or his assignee, and that said company also be directed to pay to said Warren, or his assignee, the dividend mentioned in said bill of complaint and any other dividend thereafter declared by said company upon such shares of stock; that in the meantime, and until the further order of the court, said company be enjoined and restrained from paying such dividend to any person other than the sheriff of the county of Essex, or the said George C. Warren, Jr.; that it also be enjoined and restrained from transferring upon its books any of the shares of stock mentioned in said bill of complaint to any person other than said sheriff, or said Warren, or his assignee. Complainants, by their aforesaid bill, also pray that they may have such other and further relief as may be proper. The bill of complaint in the case sub judice was ostensibly intended to compel a transfer of the shares of stock in question to said Warren on the theory that by virtue of the aforesaid sheriff's sale Warren became the equitable owner of all right, title and interest of Squier as stockholder in the New Jersey Zinc Company. Upon the filing of the bill of complaint herein a subpoena was issued and served upon the defendant New Jersey Zinc Company. A subpoena was also issued against the defendant Squier which was returned non est. On the date of the filing of said bill an order was made by the court requiring the defendants New Jersey Zinc Company and Charles Burnham Squier to show cause why the relief prayed by complainants should not be granted; and said order contained an ad interim restraint against said defendants transferring the aforesaid shares of stock to anyone other than complainant Warren or his assignee. On the return of said order to show cause the ad interim restraint was continued pendentelite. On December 14th, 1931, the defendant New Jersey Zinc Company filed an answer to complainants' bill in which interalia it set out that the National City Bank of New York held as collateral *Page 319 
security for an indebtedness owing to it by said Squier certificate No. X537, issued by said company to said Squier on March 7th, 1930, representing the ownership by said Squier of seven thousand shares of the common stock of said company, and it alleged in its said answer that the right of said bank in and to said certificate and the shares of stock represented thereby was prior to any right of the complainants Warren and Maxson with respect thereto. Thereafter, by order dated December 28th, 1931, complainants were granted leave to amend their bill of complaint by making the National City Bank of New York a party defendant, and on the same date an amendment to the bill was filed in accordance with such leave. Thereupon a subpoena was issued on said amended bill. Such subpoena was served upon the defendant New Jersey Zinc Company; it was returned non est as to the defendants Charles Burnham Squier and the National City Bank of New York. By order of the court subtsituted service by mail, and by publication in the "Newark Evening News," a newspaper printed and published in Newark, New Jersey, was directed against the defendants Squier and the National City Bank of New York. Proof of compliance with such direction has been filed herein. Thereafter the National City Bank of New York filed an answer to complainants' amended bill in and by which it prayed inter alia
that its interest in certificate No. X537 issued by the New Jersey Zinc Company representing shares of stock owned by the defendant Squier, pledged with said bank by said Squier as security for a loan made by it to him, be determined to be prior and superior to any interest of the complainants, or either of them, with respect thereto. On May 6th, 1932, a decree proconfesso was entered against the defendant Squier on complainants' bill, as amended. On May 24th, 1932, the New Jersey Zinc Company filed a supplement to its answer to the complainants' bill as amended. Replications were filed to the aforesaid answers. The proofs herein show that on February 24th, 1931, a suit was instituted in the New York supreme court by the defendant Squier, as plaintiff, against the complainant Maxson and the defendant New *Page 320 
Jersey Zinc Company, as defendants, praying an injunction restraining Maxson from proceeding with the action referred to in Squier's said complaint, or in any suit, action or proceeding based on a claim of said Maxson for professional services rendered to said Squier, and for an injunction restraining the New Jersey Zinc Company from in any way interfering with transfer by Squier of shares of stock of said company standing in his name on its books. The proofs show that the New York supreme court denied Squier's aforesaid application for injunction. Squier's aforesaid suit against Maxson and the New Jersey Zinc Company, and the pleadings and proofs therein, manifest that Squier was fully aware of the attachment proceedings against him in the supreme court of New Jersey at the suit of Maxson, and that he was aware also of the suit pending against him in this court auxiliary thereto; also that he was aware of the ad interim
restraint made by this court against transfer by him of certificates of shares of stock of the New Jersey Zinc Company standing in his name on the books of said company as owner. The ostensible purpose of Squier's aforesaid New York supreme court suit was an attempt upon his part to thwart the purpose of the complainant Maxson in the attachment suit commenced by him on January 3d 1931, and the bill of complaint filed by Maxson January 5th, 1931, as auxiliary to such attachment proceeding. Notwithstanding Squier was fully aware of the proceedings against him in this court and of the orders made against him therein, he tacitly acquiesced in the activities of the complainants against him. He knew that the complainants sought to establish a trust relation as between him and the National City Bank of New York with respect to the certificate representing shares of the capital stock of the New Jersey Zinc Company owned by him which said bank was holding as collateral security for an indebtedness owing by him to said bank, and that it was the purpose of said complainants through the medium of this court to obtain possession of such moneys in excess of the amount owing to said bank as would be realized from a sale of said security to obtain satisfaction of the indebtedness *Page 321 
owing to the bank which was secured thereby. The defendant Squier is chargeable with knowledge that the court of chancery had jurisdiction of the suit by which it was intended by complainants to effectuate the aforesaid purpose, notwithstanding Squier was not served with process within this state, but, in lieu thereof, service of process having been made upon him as an absent defendant by appropriate proceedings authorized by law against absent defendants. The case of Amparo Mining Co. v. FidelityTrust Co., 74 N.J. Eq. 197; affirmed, 75 N.J. Eq. 555, is indicative of the rule of law thus stated. Having in mind the proceedings in the suit instituted in this court by the complainant Maxson against the defendant Squier auxiliary to the attachment suit instituted against Squier by Maxson in the supreme court, I am of the opinion that the injunction orders issued by this court were and are operative against and binding upon him, for, as stated in Kempson v. Kempson, 61 N.J. Eq. 303
(at p. 311): "It seems to be well settled that it is a matter of no consequence how the fact of the issuing of the injunction is brought to the knowledge or notice of the defendant. If he has notice or knowledge of it, his conscience is bound, and he is liable to the consequences of its breach to the same extent as if it had been actually served upon him in writing." It was conceded in argument by all parties who appeared herein that the rights of the National City Bank of New York in and to the shares of stock of the New Jersey Zinc Company, certificate for which said bank holds as collateral security for an indebtedness owing to it by Squier, are superior to the rights of all other parties claiming an interest therein and thereto. The proofs herein show that on January 11th, 1932, Frank Hendrick, New York counsel of the defendant Squier, to whom Squier executed and delivered a general power of attorney to act for him and in his behalf, instituted an action at law in the New York supreme court against Squier himself, and on January 20th, 1932, caused a writ of attachment to be issued in said action whereby it was sought to attach the aforesaid stock certificate No. X537 in possession of the National City Bank of New York, and that judgment *Page 322 
was subsequently entered against Squier in said action in the sum of $53,695.83 upon which execution was issued and returned unsatisfied, and that on May 16th, 1932, said Hendrick, and John E. Sheehy, as sheriff of the county of New York, as plaintiffs, commenced an action at law against the New Jersey Zinc Company in the New York supreme court to recover said sum of $53,695.83 as damages alleged to have been sustained by said plaintiffs by reason of the refusal of said company to deliver to said John E. Sheehy, as sheriff aforesaid, a certificate representing seven thousand shares of the capital stock of the New Jersey Zinc Company, together with dividends declared thereon, and the right to dividends which might subsequently be declared thereon. The New Jersey Zinc Company and the National City Bank of New York are represented herein by the same firm of solicitors who urge in behalf of said defendants that the attachment suits aforesaid are without warrant in law and inefficacious to effect the purpose contemplated thereby, and they rely upon provisions of the NewJersey Uniform Stock Transfer act (P.L. 1916 p. 398), and upon provisions of a similar New York act; they urge also that nothing passed to the complainant Warren as purchaser from the sheriff of Essex county in the aforesaid attachment proceeding instituted by Maxson against Squier; they urge also that nothing passed to Hendrick, the New York counsel of Squier, by virtue of the attachment proceeding instituted by him against Squier in the New York supreme court. Neither the New Jersey Zinc Company nor the National City Bank of New York have any right to urge that the attachment proceedings made mention of herein were illegal, or that the complainants, or either of them, may not obtain any benefit therefrom. The defendant bank cannot suffer any grievance in the matter sub judice if it obtains satisfaction of the debt owing to it by Squier. The attachment proceedings do not concern the New Jersey Zinc Company whereby it may urge any grievance with respect thereto. The defendant Squier is the only one who could urge illegality of such proceedings, and he, although fully aware of the pending proceedings, not deigning *Page 323 
to interest himself therein, but on the contrary tacitly acquiescing in complainants' prosecution of such proceedings, cannot expect this court to interest itself in his behalf. Section 13 of the New Jersey Uniform Stock Transfer act, supra, provides:
"No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."
Section 14 of said act provides:
"A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed at law or in equity, in regard to property which cannot readily be attached or levied upon by ordinary legal process."
The restraint granted by this court in the suit instituted January 5th, 1931, by the complainant Maxson against the defendant Charles Burnham Squier auxiliary to the attachment suit instituted by said Maxson against said Squier on January 3d 1931, and the restraint granted by this court in the suit instituted November 2d 1931, by complainants Maxson and Warren against defendants Charles Burnham Squier and the New Jersey Zinc Company to prevent transfer of Squier's stockholding interest in the New Jersey Zinc Company pendente lite is tantamount to an injunction as comprehended within provisions of sections 13 and 14 of the New Jersey Stock Transfer act, supra, and perches upon all right, title or interest of the defendant Squier as a stockholder in the New Jersey Zinc Company, and all rights or interests of said Squier in and to shares of stock issued to him by said company, standing in his name on the books of said company, so as to make all the right, title and interest of Squier as a stockholder of the New Jersey Zinc Company, *Page 324 
and the certificate representing the number of shares of stock owned by him in said company, which certificate is held by the National City Bank of New York as security for an indebtedness owing to it by said Squier, subject to the equitable claim of the complainants herein thereto.
Counsel for all parties appearing herein stated and conceded in argument in the matter sub judice that the shares of stock in question are of a present market value considerably in excess of the indebtedness owing by Squier to the National City Bank of New York. In view thereof it is manifest that the bank can be made whole by a sale of said stock. It has ample authority to make sale of said stock by virtue of an assignment thereof made to it by Squier, and also by virtue of a power of attorney made to it by him auxiliary to such assignment. I am of the opinion that said bank should be required to sell the shares of stock represented by certificate No. X537, which it holds, to make satisfaction from the amount realized from such sale the amount owing to it by the defendant Squier, as evidenced by promissory notes which it holds against him, and as security for payment of which it holds, as pledges, the aforesaid stock certificate. The amount of excess or surplus moneys realized by said bank over and above the amount required to satisfy its own claim against Squier should be turned over by said bank to the clerk of this court, subject to the further order of the court. I have in mind that Frank Hendrick, who is said to be a New York judgment creditor of the defendant Squier, is not a party to the instant suit, or to the suit between Maxson, as complainant, and Charles Burnham Squier, as defendant, which precedes the instant suit in point of time, and that said Hendrick may consider himself warranted in urging a claim to such excess or surplus moneys. In expressing my opinion in this respect I have in mind that rights of all parties in interest in and to such excess or surplus moneys may be appropriately inquired into and determined by this court in substantially the same manner in which the rights of parties who consider themselves entitled to an interest in surplus moneys arising *Page 325 
out of mortgage foreclosure proceedings may be inquired into and determined.
A certificate of corporate stock is merely a convenient evidence of stock ownership; it is not necessary to constitute one a stockholder. Lask v. Bedell, Inc., 91 N.J. Eq. 341;American Pig Iron Storage Co. v. State Board of Assessors,56 N.J. Law 389, 393. See, also, Bijur v. Standard Distillingand Distributing Co., 74 N.J. Eq. 546 (at p. 556). As stated in Chadwick v. McClurg, 103 N.J. Eq. 55 (at p. 59): "A share of corporate stock signifies an aliquot part of the corporation's property, and is but evidence of the right of the owner thereof to share in the proceeds of such property."
Section 20 of the Corporation act states that shares of stock are personal property. Therefore, in equity, an attachment creditor, and a judgment creditor, may by resorting to this court auxiliary to proceedings at law obtain an injunction whereby such creditors may assert rights against an attachment debtor or a judgment debtor who is a stockholder of a corporation in instances where such creditors may not be able to lay hold of the certificate evidencing the number of shares of corporate stock owned by such debtor. Squier, in pledging his stock certificate with the National City Bank of New York, did not divest himself of absolute ownership of his stock; he retained an equitable interest therein to such extent that the shares were greater in value than the amount of loan which they were pledged to secure payment of. Notwithstanding such pledge Squier had an undoubted right to sell his shares of stock subject to the claim of the bank against same for a loan less than the value of the shares. If it were a mortgage the bank held as security, instead of shares of stock, and the amount of the mortgage was in excess of the amount of the loan payment of which was secured by the mortgage, assignment of which it held as collateral, there is no doubt that the assignor of the mortgage would have a right to dispose of the mortgage subject to the bank's claim. Such an instance would be comparable to Derechinsky v. Epstein,98 N.J. Eq. 79; *Page 326 affirmed, 99 N.J. Eq. 447, citing Norton v. Warner
(N.Y.), 3 Edw. Ch. 106 (L.Ed. 589 and note).
In Wallach v. Stein, 103 N.J. Law 470, the court of errors and appeals held that a sale of stock by a sheriff without seizure of the stock certificate confers no title on the purchaser unless the certificate be surrendered to the issuing corporation or its transfer enjoined, and (at p. 472): "There are many ways by which stock ownership may pass from one person to another. It may pass by assignment direct; by sale on execution; by judicial sale under decree of court, or by decree direct, and, perhaps, by other methods." The certificate of shares pledged by Squier was not transferred on the books of the New Jersey Zinc Company to the National City Bank of New York. For all intents and purposes comprehended within the Corporation act Squier continued, as between himself and the New Jersey Zinc Company, to be the sole owner of said shares, entitled to vote thereon at stockholders' meetings and entitled to dividends declared thereon.
The situs of stock is in the state of the corporation's domicile. Andrews v. Guayaquil and Quito Railway Co., 69 N.J. Eq. 211.
Counsel for the defendants New Jersey Zinc Company and National City Bank of New York has urged herein that in any proceeding for an injunction, the certificate and not the interest in the corporation represented thereby is the res, and where neither the certificate nor the holder thereof is within the jurisdiction of the court no effective injunction restraining a transfer of the certificate or of the shares represented thereby can be issued. I am not in accord with such reasoning. The provisions contained in sections 13 and 14 of the Uniform Stock Transfer act, supra, with respect to the enjoining of the transfer of a certificate of stock, are significant, and, in my judgment, indicative that when corporate stock is so far subject to the control of the corporation that its formal transfer cannot be perfected without the action of the corporation, process of garnishment, execution or attachment may be effectively served upon the corporation at its domicile and thus warn the corporation not to perfect any transfer without the permission of the *Page 327 
court, and thus subjects that matter to the jurisdiction of the court. It cannot reasonably be urged that a non-resident stockholder of a domestic corporation, who is heavily indebted to creditors who are residents of the state of the domicile of the corporation, may frustrate his creditors from the appropriation of his shares of stock to the satisfaction of such judgments as may be obtained against him by such creditors, by resorting to the medium of pledging his certificate of stock ownership with a non-resident creditor as collateral security for an indebtedness owing by him to such creditor, and thus circumvent appropriation by the court of such value of the shares of his corporate stock over and above the amount necessary to be paid to the non-resident creditor in satisfaction of his debt, to the satisfaction of claims against him by resident judgment creditors. It was very likely to meet some such situation that the legislature provided in sections 13 and 14 of the Uniform Stock Transfer act for the issue of injunctions, which in the instant case may well be regarded as an appropriate auxiliary to Maxson's attachment suit to enable him to resort to this court to reach and apply property interest of Squier towards the satisfaction of his claim which he could not reach through the law courts. I have in mind that the authority of this court to issue the injunctions provided by sections 13 and 14 of the Uniform Stock Transfer act was to secure thereunder rights which creditors, execution or otherwise, might have had difficulty in acquiring. In Rioux v. Cronin, 222 Mass. 131;109 N.E. Rep. 898 (at p. 901), section 13 of the Uniform Stock Transfer act is mentioned, and with respect thereto the court says: "As injunctions were issued against the transfer of this stock, the plaintiffs are not barred by the provisions of that act. Whatever may be the nature of the present proceedings, whether under general principles of equity or under the statute to reach and apply, there was ample authority in the court to issue injunctions to secure under the Uniform Stock Transfer act rights which creditors, execution or otherwise, might have had difficulty in acquiring." *Page 328 
The National City Bank of New York, as the possessor of the certificate of stock issued to the defendant Squier, which it holds in due course of law, and which it has a right to make sale of to satisfy the indebtedness owing to it by the defendant Squier, and as security for which indebtedness it holds said certificate, is warranted in law in making sale thereof; and the purchaser from the bank of the aforesaid certificate of stock will acquire good title thereto. See Uniform Stock Transfer act,supra. See, also, Iowa Securities Corp. v. Ridgewood NationalBank, 175 N.Y. Supp. 776. Said bank not only has possession of the certificate but it also has a separate instrument executed and delivered by the defendant Squier assigning the certificate to it; and it has also a power of attorney executed and delivered to it by the defendant Squier authorizing it to transfer the certificate to whomsoever it may make sale thereof. Under the facts and circumstances disclosed herein said bank should be compelled by the decree of this court to sell the shares of stock represented by the aforesaid certificate, pay to itself the amount of its claim against the defendant Squier from the proceeds of the sale, and pay over the excess or surplus realized from the proceeds of such sale to the clerk of this court, subject to the further order of the court; and such payment by this court's decree will exonerate said bank from liability to any of the parties to this suit, and from liability to the aforesaid Frank Hendrick with respect to the judgment obtained by him against the defendant Squier in attachment proceedings instituted by Hendrick against Squier in the New York supreme court, because, as stated hereinabove, Hendrick, and the complainants herein, and the defendant Squier, may by appropriate proceedings have their respective rights to the moneys so paid to the clerk of this court determined by this court. I regard the instant suit as quasi in rem. In Cameron v. Penn Mutual LifeInsurance Co., 111 N.J. Eq. 24, 36, it is said that jurisdiction in such cases is based upon the fact that the res has itssitus within the state, and not upon the fact of title in thatres in a non-resident defendant. The same case holds that in actions in rem or quasi in rem service of process upon a non-resident *Page 329 
defendant by publication constitutes due process and will be sustained. The case also holds (pages 27, 28): "Quasi in rem is a term applied to proceedings which are not strictly and purelyin rem, but are brought against the defendant personally although the real object is to deal with particular property." In the Amparo Case, supra, Vice-Chancellor Stevenson held that non-resident defendants have a right to be heard in the courts of the state and the utmost that can be demanded on the part of non-resident defendants is that they shall be fairly notified of the action so as to have ample opportunity to appear and be heard thereon. When these conditions exist the rights of all parties interested in the res are determined by due process of law. In the Amparo Case, supra, Mr. Justice Swayze, writing the opinion of the court of errors and appeals, says (at p. 558): "The fact is that the property right of a stockholder in a corporation is an intangible thing, which may well be called a chose in action, and has no actual situs anywhere in the sense that real estate or tangible chattels have. * * * A complete and effectual transfer of the stock can only be had upon the books of the corporation in New Jersey, and if the stock is ever to be converted into cash, otherwise than by mere sale, it must be by a distribution of the assets of the corporation to be had in New Jersey." And (at p. 560) the court says: "We think there is ares within this state and that no personal action of the defendant is necessary which would require a decree inpersonam."
If the New Jersey Zinc Company has not paid the dividends declared by said company upon the shares of stock in question, such unpaid dividends should be paid by said company to the clerk of this court, subject to the further order of the court herein, in order that the moneys represented by such dividends may be dealt with by this court together with such moneys as shall be paid to the clerk of the court by the National City Bank of New York, as hereinabove mentioned.
Counsel for the defendants New Jersey Zinc Company and National City Bank of New York has stressed, in argument, in support of claims made by him in behalf of the defendants *Page 330 
represented by him, the case of Brimberg v. Hartenfeld BagCo., 89 N.J. Eq. 425. I am of the opinion that the cited case is neither analogous nor applicable to the case sub judice. In theBrimberg Case, supra, the court was apparently actuated in its determination by the fact that the Hartenfeld Bag Company, a foreign corporation, not authorized to do business in this state, a debtor of the complainant, had negotiated an order bill covering the goods which were in question in said suit, to a resident of Illinois, and that such order bill was in the actual possession of another defendant, a resident in New York. Neither the resident of Illinois or the resident of New York were parties to the suit. In holding that goods in possession of a common carrier upon which there had been issued a negotiable order bill could not, in view of the act of congress and of the statute of this state mentioned in the case, be attached unless the bill had been surrendered to the carrier or negotiation had been enjoined, the court declared (at p. 429): "It appears that the holder of the bill and the bill itself are without the jurisdiction of this court so that this court is without power to effectively enjoin negotiation." Such is not the case sub judice because theholder of the certificate of stock in question herein, the National City Bank of New York, by reason of its having been made a party defendant herein, and entering a general appearance in the suit by filing an answer to the complainants' bill, in which answer it prays that its rights be inquired into and determined herein, is clearly within the jurisdiction of this court, and therefore this court is empowered to effectively enjoin such defendant, and such decree as the court may make herein is binding upon said defendant.
I will advise a decree in favor of the complainants and against the defendants in accordance with the conclusions hereinabove expressed.