GENERAL MOTORS CORPORATION, Appellant, *v.* EDWARD VER LINDEN, Respondent.

First Department, January 13, 1922.

**Attachment — certificates of stock of foreign corporation subject to levy in this State although not negotiable.**

Certificates of stock in a foreign corporation when found in this State are subject to levy under a warrant of attachment issued out of a court of this State, even though the certificates at the time of the levy are not negotiable, no power of attorney having been executed by the owner.

APPEAL by the plaintiff, General Motors Corporation, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 4th day of October, 1921, granting defendant's motion to vacate and set aside a warrant of attachment, an attempted levy by the plaintiff under a warrant of attachment and an order for the service of the summons herein upon said defendant by publication.

*John Thomas Smith* of counsel, for the appellant.

*Stanchfield & Levy* [*William M. Parke* of counsel; *Roswell P. C. May* with him on the brief], for the respondent.

Merrell, J.:

The basis of the motion to vacate the warrant of attachment is that the sheriff has failed to levy upon any property of the defendant in the State of New York.

The plaintiff is a foreign corporation, organized and existing under and by virtue of the laws of the State of Delaware. The defendant is a non-resident of the State of New York, and was formerly vice-president and a director of the plaintiff, General Motors Corporation, and in charge of the plaintiff's Olds Motor Works division at Lansing, Mich. Under the terms of a written contract of employment with the plaintiff, defendant was entitled to an annual salary of $100,000, together with a further sum dependent upon the profits earned each year by the division in his charge as affected by the profits of the corporation as a whole.

On April 9, 1921, the defendant wrote the plaintiff's president, making claim for $134,244.71, as the balance of the compensation due him for the year ending December 31, 1920. Plaintiff's president disputed defendant's claim in this respect, and refused to pay the defendant the amount claimed by him. Thereupon the defendant took matters in his own hands and appropriated from moneys on deposit by the plaintiff in local depositary banks in Michigan approximately $540,000. These moneys of the plaintiff were deposited subject to the control of the defendant and a subordinate employee dominated by him. Fifteen days later and on May 5, 1921, the defendant wrote plaintiff's president in explanation of his action, stating: " * * * As the corporation has delayed, since the first of the year, paying me the compensation, due for my services under the contract, I have drawn sufficient money to cover the compensation due me pending settlement." An investigation with reference to such withdrawal was then instituted, and it was discovered, as before stated, that the defendant had withdrawn altogether the sum of $540,000.

Under the terms of the contract whereby defendant entered

plaintiff's employ, and which contract was contained in a letter written by W. C. Durant, who was then president of the plaintiff, it was provided as follows:

" You are to elect what portion of the balance due shall be paid you in cash or in bonus stock under the regular terms of the Bonus Plan, except as hereinafter stated, provided, however, until December 31, 1919 at least one-third shall be liquidated by a Bonus allotment, and should the contract be continued without modification two-thirds shall be in Bonus Stock for the year 1920.

" As the aim and intent of this form of compensation agreement is to effect a large and continuing investment in General Motors stock by the General Managers, the forfeiture clause as embodied in paragraph 7 of the Bonus Plan, whereby a forfeiture would occur in case you are removed by the Corporation, will be waived.

" In other words, if the Corporation severs your connection with the business, the forfeiture provision in your particular case will not be enforced. If, however, you should leave the service of the Corporation of your own volition the provisions of the Bonus Plan will apply as in other cases."

The plaintiff demanded return of its funds withdrawn by the said defendant, and upon his refusal the defendant was discharged by plaintiff from its employ.

Pursuant to the contract and the bonus plan adopted by the plaintiff, and in which the defendant participated, there was, at the time of the defendant's discharge, in the possession of one R. E. Briggs, bonus custodian in the State of New York, stock certificates for 15,791 shares of the General Motors Corporation common stock, of the value of $11.25 a share, and 500 shares of the seven per cent debenture stock of the General Motors Corporation, of the value of $77 a share. The total value of said shares of stock amounted to $216,148.75. All of said shares of stock then held by the bonus custodian were in the name of and were the property of the defendant. These shares of stock were held by said bonus custodian under the General Motors Corporation bonus plan, which, among other things, provided as follows:

" 5. When bonuses are awarded, a stock certificate for the number of shares allotted to each beneficiary shall be issued

in his name and delivered to the Bonus Custodian, who shall hold the same for the beneficiary for a period of five years from the first day of the preceding January until finally delivered or settled for as hereinafter provided. The Bonus Custodian shall notify each beneficiary, through the Head of his Division, of the award granted, and shall procure from him irrevocable powers of attorney to be used to re-transfer the stock as herein provided in case the beneficiary leaves the service of the corporation or is dismissed."

The bonus custodian never procured from the defendant the irrevocable powers of attorney to be used to retransfer the stock as provided for in subdivision 5 of the plan above quoted. The sheriff of New York county, pursuant to the warrant of attachment delivered to him herein, made his levy in the manner required by statute upon the interest of the defendant in said shares of stock, and the order appealed from has set aside such levy.

The ground upon which defendant moved to set aside the warrant of attachment was the alleged failure of the sheriff thereunder to levy upon any property of the defendant within the State of New York. The failure of the defendant to deliver to the bonus custodian irrevocable powers of attorney to be used to retransfer the stock held by said bonus custodian, in case it was desired to transfer the same, is the principal ground upon which defendant bases his claim of the sheriff's failure to make a valid levy.

The defendant has never appeared in the present action, except specially for the purpose of moving to vacate the levy and to set aside the warrant of attachment and order of publication herein, and is continuing such special appearance for the purpose of prosecuting this appeal.

In his moving affidavit the defendant avers as follows: " *    *    * Said certificates for said stock have been in the actual possession of an employee of the plaintiff, to wit: R. E. Briggs, known as the ' bonus custodian.' *    *    * I have never at any time signed or executed, nor have I at any time authorized anyone to sign or execute on my behalf, any assignment, endorsement, power of attorney or other instrument assigning or transferring the said certificates or any of them, or the stock represented by said certificates or any part thereof."

While no reason is suggested for the failure of the bonus custodian to procure the necessary irrevocable powers of attorney to enable him to retransfer the stock of the defendant which he held, it is claimed by the defendant, respondent, that, because of such failure and in view of the inability of the bonus custodian to transfer said stock, the defendant had no leviable interest in the certificates representing said shares of stock.

The court at Special Term held with the defendant and granted the order vacating said attachment and the levy thereunder, and also vacating the order for the service of the summons upon said defendant by publication.

It seems to me that the court erred in granting the order appealed from. Section 647 of the Code of Civil Procedure, in effect at the time of the making of said levy, provides as follows:

" § 647. Interest in shares or bonds. The rights or shares which the defendant has in the stock of an association or corporation, or in a bond negotiable or otherwise, together with the interest and profits thereon, may be levied upon; and the sheriff's certificate of the sale thereof entitles the purchaser to the same rights and privileges, with respect thereto, which the defendant had when they were so attached."

A perusal of this section impresses me that it is immaterial whether a security is negotiable or not. It was the *interest of the defendant in the securities* which the sheriff attached. I can see no reason why the possible difficulty of realizing upon defendant's interest in the property should defeat the right to attach such interest. Subdivision 3 of section 649 provides the manner in which intangible property must be attached, the said subdivision, read with the general provisions of the section, providing as follows:

" A levy under a warrant of attachment must be made as follows: * * *

" 3. Upon other personal property, by leaving a certified copy of the warrant, and a notice showing the property attached, with the person holding the same; or, if it consists of a demand, other than as specified in the last subdivision, with the person against whom it exists; or, if it consists of a right or share in the stock of an association or corporation,

or interests or profits thereon, with the president, or other head of the association or corporation, or the secretary, cashier, or managing agent thereof   *   *   *."

The Code provisions do not require that shares of stock of the defendant in a corporation shall be indorsed, and the ease with which the defendant's property interest may be liquidated has, to my mind, nothing to do with the attachability of such interest.  The law is reasonably well settled in this State that the interest of the owner of the shares of stock of a foreign corporation may be attached where the certificates are within the jurisdiction of our courts.  (*Simpson* v. *Jersey City Contracting Co.*, 165 N. Y. 193.)

In *Simpson* v. *Jersey City Contracting Co.* (*supra*) the action was brought in this State against a foreign corporation to recover for professional services.  The plaintiffs procured a warrant of attachment to be issued and a levy thereunder to be made upon the interest of said foreign corporation in certain shares of the capital stock of the New Jersey and Pennsylvania Telephone Company, also a foreign corporation, which shares belonged to the defendant and the certificates for which said defendant had delivered to the Produce Exchange Trust Company of the city of New York as security for the payment of a note.  The levy under the warrant of attachment was made pursuant to the provisions of subdivision 3 of section 649 of the Code of Civil Procedure.  The question certified to the Court of Appeals by this Appellate Division was as follows: " Whether, where the certificates of stock of a foreign corporation belonging to a non-resident of the State are in possession of a resident of this State, as pledgee, the interest of the owner and pledgor can be levied upon under a warrant of attachment against such owner, made by service of a notice on the pledgee in the manner prescribed by subdivision 3 of section 649 of the Code."

The Court of Appeals answered the question thus certified to it in the affirmative.  Judge GRAY, in the prevailing opinion, said (at p. 197): " That the defendant's interest in the pledge was of a residuary nature and constituted a claim upon the pledgee is true.  The defendant had, to the extent of its ability, transferred to the trust company, as security for the payment of its indebtedness, whatever was its interest

in the foreign corporation as evidenced by the delivery of the certificates of stock. Did it not, therefore, clearly, have property rights, or interests, within this State, which could be impounded by our courts to abide the result of the litigation over the plaintiff's claim? I think so. The distinctions sought to be drawn are, largely, artificial. The truth is that it did have property here, in the common acceptation of the term, as well as in the eye of the law. Certificates of stock are treated by business men as property for all practical purposes. They are sold in the market and they are transferred as collateral security for loans, and they are used in various ways as property. They pass by delivery from hand to hand and they are the subject of larceny."

The Court of Appeals there held that the interest of the pledgor, which, at most, was but a residuary right remaining after the payment of the note for which the certificates of stock were pledged as security, was subject to levy under an attachment. In the case at bar the defendant was the owner, not of a mere equity in the certificates remaining after the satisfaction of a debt for which they were pledged, but he was the owner of an absolute right therein, and because of such ownership there is the greater reason for holding defendant's interest in said shares to be subject to attachment. It matters not that in the *Simpson* case the certificates of stock were here under a pledge by the owner, or whether, as in the case at bar, defendant's certificates of stock were here pursuant to a contract between the corporation issuing the stock and the defendant, the owner of the stock. The important fact is that the *certificates representing the stock were here* and were property, and, therefore, subject to levy under an attachment.

In *Lowenthal* v. *Hodge* (120 App. Div. 304) 42,000 shares of the stock of a Nevada corporation were deposited in the State of New York under a pooling agreement to guard against premature sale, and it was held by this court that the stock thus deposited was subject to attachment. Mr. Justice SCOTT, writing for this court and referring to *Simpson* v. *Jersey City Contracting Co.* (*supra*), said: " The only difference between that case and the present is that there the person holding the certificates of stock had advanced money upon them as security. This as we consider does not affect the principle

First Department, January, 1922.    [Vol. 199

underlying that decision. An attachment is merely a possessory process, and if the person holding the attached property so holds it by a right or title, which would justify its retention from the owner, it will, generally, be sufficient to justify a refusal to make actual delivery to the sheriff, and the agreement under which Weir held the stock would, as it appears, have justified his withholding the stock from the real owner until January 1, 1907, the consideration for Hodge's agreement that it should be held until that time being found in the like mutual agreement by the other depositors. The objection that the stock was not in Smith's custody, but in Weir's, is unavailing, and most of all to Weir and his attorney. Weir explicitly created Smith his agent to hold the stock, to receive service of the attachment and to give the certificate, and neither he nor his attorney can now be heard to say that the levy was invalid for this reason. We find, therefore, no reason for questioning the sufficiency of the levy, and certainly none that is available to the attorney    *    *    *.''

And it was said in *People ex rel. Wynn* v. *Grifenhagen* (167 App. Div. 572) by Mr. Justice Laughlin, writing for this court (at p. 578): "    *    *    * If the interest of a non-resident owner in the capital stock of a foreign corporation, which is pledged as security for a debt within this jurisdiction, is subject to the levy of an attachment, I fail to see upon what principle the stock in question was not subject to the levy of the attachment. Here the bank had no lien, but it had possession with authority to sell, and by the assignments executed in blank by the owner the purchaser would become entitled to have the stock transferred to his name on the books of the company in the foreign jurisdiction. *I am of opinion, therefore, that certificates of stock, whether of a domestic or a foreign corporation, are personal property within the contemplation of the provisions of the sections of the Code of Civil Procedure relating to the levy of a warrant of attachment*    *    *    *.'' (Italics are the writer's.)

The respondent attempts to distinguish the *Simpson* case upon the ground, according to the prevailing opinion in that case, that the certificates had been duly assigned, whereas, in the case at bar there was no assignment or authority granted by the defendant to transfer said certificates of stock. It was,

nevertheless, a feature of the plaintiff's bonus plan which the defendant adopted, and to which he must be deemed to have agreed, that he would furnish the bonus custodian with irrevocable powers of attorney to be used to retransfer said stock. The case at bar is also distinguishable from the feature of the *Simpson* case upon which the dissent therein arose, in that the plaintiff is engaged in business in the State of New York, and the shares of its stock in question are physically within this jurisdiction, and none of the difficulties of enforcing rights against these shares in foreign courts exist. Furthermore, the defendant claims that upon his discharge by plaintiff he became at once entitled absolutely to said shares of stock. To enforce such claim he must come within the jurisdiction of our courts, and where the claimed obstacle to a transfer of his stock arises solely from the neglect or refusal of the defendant to perform his part of the contract and to furnish the bonus custodian with the necessary irrevocable powers of attorney in case the plaintiff should succeed, it would seem strange that equity would not devise some means to compel the defendant to execute the necessary documents to effect a transfer of said stock.

The most recent judicial expression on the subject is by the United States Supreme Court in the case of *Yazoo & Mississippi Valley R. R. Co.* v. *Clarksdale* (—— U. S. ——), decided on November 7, 1921. The point involved in that case was the authority of a sheriff's sale under execution of a certificate representing 250 shares of the capital stock of the Louisville, New Orleans and Texas Railway Company. The certificate for said stock had been left in the custody of a bank unpledged and unassigned, and was levied upon by the marshal under an execution against the city of Clarksdale, its owner. The execution sale was sustained by the Supreme Court. Chief Justice TAFT, writing for the court, said: "The procedure provided in Section 849 [Mississippi Code], in our view, was intended to furnish to the levying officer a certificate of the shares of the defendant which the officer could manually take and offer for sale as the shares, and which, when indorsed by the officer with a record of his proceedings and sale, would work an assignment of the shares to the purchaser 'as if regularly assigned to him by defendant,' *i. e.,* by the usual

transfer of a certificate. If we are right in this view, and the absence of any specific form for a levy in the section confirms us in it, then, of course, a certificate of shares issued to the debtor, and found in the custody of his agent or trustee, is the proper subject of levy and sale under the section. This statutory method of treating shares of stock and certificates for them as the same for purposes of levy and ' as goods and chattels' is not without parallel. (*People ex rel. Wynn* v. *Grifenhagen,* 167 App. Div. 572; *Mitchell* v. *Leland Co.,* 246 Fed. Rep. 103; *Beal* v. *Carpenter,* 235 id. 273; *Puget Sound National Bank* v. *Mather,* 60 Minn. 362.)"

I am, therefore, of the opinion that the levy of the sheriff of New York county under said warrant of attachment was good, and that whatever the interest of the defendant may be in said stock, the same has been properly impounded by the sheriff under said warrant of attachment.

The court erroneously set aside the order for the service of the summons upon the defendant by publication. The action of the court below in this respect was upon the theory that no valid levy was made under said warrant of attachment. For the reasons hereinbefore stated, I am of the opinion that such levy was good, and that, therefore, the court could not properly set aside the order for service of the summons by publication upon the ground of an invalid levy.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and PAGE, JJ., concur,

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.