The facts giving rise to this controversy are correctly stated by counsel for the defendant Mintz in his brief as follows:
The original bill of complaint alleged that complainant and defendant are both residents of the State of New York; that complainant instituted his suit in our supreme court against the defendant to recover $10,850 due him under a contract; that the defendant owns one hundred and sixty shares of stock in the Elblum Holding Corporation, a domestic corporation, which he threatened to put beyond the reach of complainant, and that complainant knows of no other assets of defendant out of which his claim at law, if reduced to judgment, could be satisfied. The bill prayed that the defendant be restrained from disposing of his stock until such time as complainant shall obtain a judgment at law against the defendant. The corporation was not joined as a party to the original bill.
The defendant having been served with a copy of the order to show cause in the city of New York, where he resides, applied for and was granted leave to enter a special appearance "for the purpose of asserting want of jurisdiction of this court over him, and to move to set aside the service of the bill of complaint and order to show cause."
On the return day of the defendant's motion to quash and before the determination thereof, the complainant filed an amended and supplemental bill, reiterating the substance of the original bill and alleging further that since the filing of the original bill he obtained a writ of attachment out of the Morris county circuit court, under the authority whereof the sheriff attached said shares on the books of said corporation. The amended bill admits, however, that the defendant-holder resides in the city of New York, and that the certificate of stock is in the possession of the defendant outside the State of New Jersey, and that the certificate "was not actually seized by the officer making the attachment, and has not been surrendered to the corporation." The amended bill is obviously filed under the Uniform Stock Transfer act (P.L. 1916, p. 398) and added the corporation as a party defendant, *Page 406 
praying that it be enjoined and restrained from "making or permitting any transfer of said shares of stock upon the books or records of said company or from paying any dividends thereon or permitting any change in the status thereof, until the further order of the court * * *."
The order to show cause on the amended bill having also been served upon the defendant J. Elgart Mintz, in the city of New York, he again applied for and was granted leave to enter a special appearance to challenge the jurisdiction of the court over him and to move to set aside the service of that order to show cause. Such a motion is now before the court.
The proofs before the court show, and it is conceded, that at the time of the service of said papers upon him, the defendant J. Elgart Mintz was a resident of, and domiciled in the State of New York, that the certificate of stock was and is in the State of New York, and that the defendant corporation was incorporated, and the said certificate was issued by it, after the taking of effect of the Uniform Stock Transfer act.
The disposition of this motion turns upon the narrow question of what is the situs of the corporate stock here involved forthe purpose of attachment and levy.
At common law, and in New Jersey prior to 1842, shares of corporate stock, being intangible and incapable of physical seizure, and not being debts due and collectible from the corporation at the stockholders' will, were not the subject of attachment and levy. Princeton Bank v. Crozier Moore,22 N.J. Law 383; Voorhis v. Terhune, 50 N.J. Law 147, 159; Cook,Corporations § 480.
The act of March 9th, 1842, entitled "An act to abolish imprisonment for debt" prescribed the method of levying upon corporate stock under an execution and in the revision of 1846 the provisions of that act touching levies upon corporate stock passed into the act respecting executions. Rev. Stat. 1847 p.976 §§ 7, 8. Under the provisions of these early acts and subsequent legislation, a valid levy upon corporate stock could be made at the office of the corporation irrespective of the location of the stock certificate or *Page 407 
residence of the stockholder. See Comp. Stat. p. 2244 §§ 4, etseq.; Princeton Bank v. Crozier Moore, supra; Voorhis v.Terhune, supra; Mulock v. Ulizio, 102 N.J. Law 251. But since the adoption of the Uniform Stock Transfer act by our legislature (P.L. 1916 p. 401; Rev. Stat. 1937 title 14 p. 15) a valid levy or attachment upon shares of corporate stock could be made only by actual seizure of the stock certificate by the levying or attaching officer, unless the certificate be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Section 13 of that act (Rev. Stat. 1937 14:8-39) reads as follows:
"Attachment or Levy Upon Shares. No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it."
And see Wallach v. Stein, 102 N.J. Law 517; affirmed,103 N.J. Law 470.
Prior to that act, our courts held that the situs of the stock of a New Jersey corporation was at the domicile of the corporation, irrespective of the location of the stock certificate. Andrews v. Guyaquil and Quito Railway Co.,69 N.J. Eq. 211; Amparo Mining Co. v. Fidelity Trust Co., 74 N.J. Eq. 197; affirmed, 75 N.J. Eq. 555; and that such stock was subject to attachment under our statute, although the certificate of stock was in the possession of the debtor outside the state.Curtis v. Steever, 36 N.J. Law 304; Cord v. Newlin,71 N.J. Law 438. But since the adoption of the Uniform Stock Transfer act by our legislature the situs of corporate stock, for the purpose of attachment and levy, has followed the certificate and is now where the certificate is found. Amm v. Amm, 117 N.J. Eq. 185; Johnson v. Wood, 15 N.J. Mis. R. 150; Klein v.Wilson Co., Inc., 7 Fed. Rep. 2d 769; affirmed,7 Fed. Rep. 2d 777. The Uniform Stock Transfer act has made certificates of *Page 408 
stock fully negotiable (Williston, Sales of Goods (2d ed.)797 note 4; Harbridge v. American National Bank of Racine,177 Wis. 206; 187 N.W. Rep. 853; Peckinpaugh v. H.W. Noble Co.,52 A.L.R. 941; 238 Mich. 464; 213 N.W. Rep. 859; and see commissioner's notes to Uniform Stock Transfer act (9 U.L.A.), and constitutes then the res for purposes of attachment and levy. Johnson v. Wood, supra; Lockhart v. Dickey,161 La. 282; 108 So. Rep. 483; Newell v. Tremont Lumber Co.,161 La. 649; 109 So. Rep. 344; Goodrich, Conflict of Laws, 406;Ballantine, Private Corporations 470; Mulock v. Ulizio, supra;Wallach v. Stein, supra; Klein v. Wilson, supra; AmericanSurety Co. v. Kasco Mills, 262 N.Y. 585; 188 N.E. Rep. 75;Bloch-Daneman Co. v. J. Mandelker Son, Inc., 205 Wis. 641;238 N.W. Rep. 831; Peckinpaugh v. H.W. Noble Co., supra;Guaranty Trust Co. v. Fentress, 61 Fed. Rep. 2d 329; and for federal estate and inheritance tax purposes the situs of corporate stock has been held to be at the domicile of the owner and not at the domicile of the issuing corporation. FirstNational Bank v. Maine, 284 U.S. 312; 76 L.Ed. 313; Miller v.McCutcheon, 117 N.J. Eq. 123. The Uniform Stock Transfer act, however, was not involved in either of these latter decisions. Those who desire to trace the development of the law touching the attachment and levy upon corporate stock are referred to the following authorities in addition to others cited herein:DeGanay v. Lederer, 239 Fed. Rep. 568; Cook, Corporations
(8th ed.) ch. XXVII; Fletcher's Encyclopaedia of Corporations, § 4757; Ballantine, Private Corporations § 148; Pinney v.Nevills, 86 Fed. Rep. 97; Warrior Coal and Coke Co. v.National Bank of Augusta, 169 Ala. 646; 53 So. Rep. 997;Christmas v. Biddle, 13 Pa. St. 223; Murphy v. Crouse,135 Cal. 14; 66 Pac. Rep. 971; Richardson v. Busch, 198 Mo. 174;95 S.W. Rep. 894; 27 Harvard Law Review 107, 110; Schumacher v.Greene-Cananea Copper Co., 117 Minn. 124; 134 N.W. Rep. 510; 38L.R.A. (N.S.) 180; Lockwood v. United States Steel Corp.,209 N.Y. 375; 103 N.E. Rep. 697; Vidal v. South AmericanSecurities Co., 276 Fed. Rep. 855; Wait v. *Page 409 Kern River, c., Co., 157 Cal. 16; 106 Pac. Rep. 98;Parks-Cramer Co. v. Southern Express Co., 185 N.C. 428;117 S.E. Rep. 505; Simpson v. Jersey City Contracting Co., 165 N.Y. 193; 58 N.E. 896; People v. Grifenhagen, 152 N.Y. Supp. 679;General Motors Corp. v. Ver Linden, 192 N.Y. Supp. 28; 199 App. Div. 375; Direction Der Disconto-Gesellschaft v. United StatesSteel Corp., 267 U.S. 22; 69 L.Ed. 495; Pilger v. United StatesSteel Corp., 102 N.J. Eq. 506; Lohman v. Kansas City SouthernRailway Co., 326 Mo. 819; 33 S.W. Rep. 2d 112; Norrie v.Lohman, 16 Fed. Rep. 2d 355; Beal v. Carpenter,235 Fed. Rep. 273; Franz v. Buder, 11 Fed. Rep. 2d 854; Blake v.Foreman Bros. Banking Co., 218 Fed. Rep. 264; Merritt v.American Steel Barge Co., 79 Fed. Rep. 228; State Trust andSavings Bank v. Maze, 37 S.W. Rep. 2d 419 (Tex.);Commissioner's Notes, Uniform Stock Transfer Act, 9 U.L.A.;Cotnareanu v. Woods, 278 N.Y. Supp. 589; Woods v. Spoturno,183 Atl. Rep. 319 (Del.); Peckinpaugh v. H.W. Noble Co.,supra; 85 University of Pennsylvania Law Review 522; 19 VirginiaLaw Review 386; 15 California Law Review 145; 17 Virginia LawReview 489.
The change in the law touching the attachment and levy upon corporate stock since the decisions of this court in Andrews v.Guayaquil and Quito Railway Co., and Amparo Mining Co. v.Fidelity Trust Co., supra, is undoubtedly an extension by statute of the legal fiction mobilia sequunter personam, necessary to keep pace with commercial usage, which is often an advance courier of the law.
Concededly, the stock certificate here involved has not been seized by the attaching officer or surrendered to the corporation which issued it; but it is claimed that the transfer of that certificate has been enjoined and that, therefore, actual seizure is not necessary. But it will be noted that under the provisions of section 13 of the Uniform Stock Transfer act it is the "transfer by the holder" which must be enjoined. In the instant case it is only the transfer by the corporation which has been enjoined, unless the service of the restraining order upon the defendant Mintz, the stockholder, outside of *Page 410 
the state, is a compliance with this requirement of the act. The statute requires an effective injunction. Brimberg v.Hartenfeld Bag Co., 89 N.J. Eq. 425; Johnson v. Wood, supra;Klein v. Wilson Co., supra; Amm v. Amm, supra. As was said by Vice-Chancellor Backes in the Amm Case:
"It is evident that the restraint upon the * * * company does not serve the levy under the statute, for it was not the holder of the certificates. * * * The efficacy of the writ must be found in its lawful execution. The levy must be self-sufficient. If not, it falls. Injunctions can neither amplify the attachment under the writ, were it valid, nor validate it if it be deficient. If the injunction against the * * * company was intended as an auxiliary means of forestalling the holder from transferring the stock, it was, in the absence of a valid levy, a misuse of power."
It is also contended that Brimberg v. Hartenfeld Bag Co.,supra, has no application to this controversy because that decision applied to a negotiable bill of lading and not to a stock certificate. There the goods themselves represented by the bill of lading had been attached in transit, but Vice-Chancellor Lane said:
"It appears that the holders of the bill and the bill itself are without the jurisdiction of this court so that this court is without power to effectively enjoin negotiation. Application for such relief will have to be made either in the jurisdiction where the bill or the holder is."
A comparison of the Uniform Bills of Lading act (2 Cum. Supp.Comp. Stat. p. 140 § 24) with the Uniform Stock Transfer act indicates that this comment is equally applicable to both. Section 24 of the Uniform Bills of Lading act reads as follows:
"If goods are delivered to a carrier by the owner or by a person whose act in conveying the title to them to a purchaser for value in good faith would bind the owner and a negotiable bill is issued for them, they cannot thereafter, while in the possession of the carrier, be attached by garnishment or otherwise, or be levied upon under an execution, unless the billbe first surrendered to the carrier or its negotiation enjoined.
The carrier shall in no such case be compelled to deliver the actual possession of the goods, until the bill is surrendered to him or impounded by the court." (Italics mine.) *Page 411 
In the Brimberg v. Hartenfeld Bag Co. Case, Vice-Chancellor Lane also said:
"The legislature has made the bill the res rather than the goods. The term `enjoined' used by the legislature must imply effective restraint."
To the same effect are Johnson v. Wood, Klein v. Wilson
and Amm v. Amm, supra. And so here, the legislation (the Uniform Stock Transfer act) has made the certificate rather than the proportionate share of the corporate assets which it represents, the res for purposes of attachment and levy; and in the absence of manucaption or surrender of the certificate, there must be an effective restraint against the "holder" of the certificate.
It is elementary that this court usually acts in personam, and necessarily so in issuing an injunction or decree that a party shall or shall not do a certain act or thing. Reichert v.United Brotherhood, c., 14 N.J. Mis. R. 106. An injunction inpersonam is ineffective beyond state borders in a personal action. Pennoyer v. Neff, 95 U.S. 714. Service by publication upon a non-resident in such an action is not sufficient.McGuinness v. McGuinness, 72 N.J. Eq. 381. When the object of a bill in equity is to affect the claims of the defendant to property which is not located within the state, and the defendant is not a resident or citizen of the state the court can acquire jurisdiction over the defendant only by service of process or notice within the state, or by the voluntary appearance of the defendant. Wilson v. American Palace Car Co., 65 N.J. Eq. 730.
Jurisdiction is "the right to adjudicate concerning the subject-matter in a given case" (Dodd v. Una, 40 N.J. Eq. 672,708; Munday v. Vail, 34 N.J. Law 418, 422); "there must be a subject-matter presented which is within the jurisdiction."Dodd v. Una, supra.
But it is argued that this is not an action in personam, but rather one quasi in rem. This argument is based upon the theory that the stock certificate is merely representative of the substantial thing, the corporate assets, in the possession of the corporation as exemplified in Andrews v. Guyaquil *Page 412 and Quito Railway Co., supra; Amparo Mining Co. v. FidelityTrust Co., supra, and kindred cases. Jurisdiction in such cases is based upon the fact that the res has its situs within the state and not upon the fact of title in that res in the non-resident defendant. Cameron v. Penn Mutual Life InsuranceCo., 111 N.J. Eq. 24, 36.
"An action in personam has for its object a judgment against the person, as distinguished from a judgment against property, to determine its status * * *." "A proceeding in personam is a proceeding to enforce personal rights and obligations brought against the person and based on jurisdiction of the person, although it may involve his right to, or the exercise of ownership of, specific property, or seek to compel him to control or dispose of it in accordance with the mandate of the court. In a proceeding in personam the court acts upon its jurisdiction over the person." 1 American Jurisprudence 435 ¶ 44.
"A proceeding in rem is essentially a proceeding to determine the right in specific property, against all the world, equally binding on everyone. It is a proceeding that takes no cognizance of the owner or person with a beneficial interest, but is against the thing or property itself, directly, and has for its object the disposition of the property, without reference to the title of individual claimants." Id. 436 ¶ 45.
 "Quasi in rem" is a term applied to proceedings which are not strictly and purely in rem, but are brought against the defendant personally, although the real object is to deal with particular property. They are so far in rem that jurisdiction may be acquired by the seizure or control by the court of theres. The question whether a proceeding can be sustained as onequasi in rem depends upon whether there is a res in this state upon which the decree can operate. The judgment in such an action is not conclusive upon the whole world, but is binding only upon the parties. Cameron v. Penn Mutual Life InsuranceCo., supra. Here seizure is impossible because the certificate is outside the jurisdiction and the court has no control of theres, the stock being transferrable by endorsement and delivery of the certificate. Injunction against transfer by the company on its books is control of the company and not of the res.
In Kempson v. Kempson, 63 N.J. Eq. 783 (at p. 786), our court of errors and appeals said: *Page 413 
"Whether an injunction served beyond the borders of the state upon an individual not personally under the jurisdiction of the court will bind him, depends upon the nature of the suit. If the suit be one in which the court can acquire no right to render a binding decree against an absent defendant, then its injunction, preliminary or subsequent to decree, cannot bind him. Thus, if a bill were filed here to compel a resident of New York to refrain from negotiating a bill of exchange obtained by fraud, an injunction to that effect served on the defendant in New York would be unavailing."
Where there is no res within the jurisdiction of the court upon which a decree can operate, the action is in personam and not in rem or quasi in rem. McBride v. Garland, 89 N.J. Eq. 314; Amparo Mining Co. v. Fidelity Trust Co., supra.
Counsel for the complainant, in support of his contention as to the efficacy of the service of the order to show cause upon the non-resident defendant in the State of New York, cites Warren
v. New Jersey Zinc Co., 116 N.J. Eq. 315, but that case is readily distinguishable from this one. The stock certificate there involved had been assigned by the non-resident debtor to a New York bank which voluntarily submitted to the jurisdiction of this court and actually produced the stock certificate in court, so that there was a res within this state, or in the possession of a party to the suit of which the court had complete jurisdiction and control. The dictum to the effect that the corporate stock had its situs in New Jersey, the corporate domicile, was based upon decisions of our courts antedating the adoption of the Uniform Stock Transfer act.
Hudson Navigation Co. v. Murray, 236 Fed. Rep. 419, cited by both counsel, was a bill to cancel stock certificates issued by the New Jersey corporation complainant. It was held that thesitus of the stock for that purpose was at the corporate domicile and that the action was quasi in rem. But the stock there involved was obviously issued prior to the enactment of the Uniform Stock Transfer act (see 233 Fed. Rep. 466) which is prospective only. See section 23, *Page 414 Rev. Stat. 1937 14:8-46. Pilger v. United States Steel Corp.,supra. It may well be, however, that for the purpose of cancelling stock certificates fraudulently issued and fraudulently obtained by a non-resident holder, and for some other purposes the situs of the stock is at the corporate domicile. In First National Bank v. Maine, supra, Mr. Justice Sutherland, speaking for the supreme court of the United States, said:
"Ownership of shares by the stockholder and ownership of the capital by the corporation are not identical. The former is an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of a corporation when dissolved, after payment of its debts. * * * And this interest is an incorporeal property right which attached to the person of the owner in the state of his domicile."
In a proceeding to cancel stock fraudulently issued, the corporation is seeking to terminate spurious claims against its assets whose situs is at the corporate domicile, and in this respect the action is not unlike one to cancel a fraudulent deed to land in this state in which action "the absence of the defendant would not affect the power of the court to settle the title to the land by a decree in the cause." Kempson v.Kempson, supra. In such a case, as between the stockholder and the corporation the situs might well be at the corporate domicile. See Griswold v. Kelly Springfield Tire Co., 24 N.J. Eq. 308;
and Rogers v. Guaranty Trust Co., 288 U.S. 123;77 L.Ed. 652; but as to this no opinion is expressed as the point is not here involved.
Thompson v. Terminal Shares, Inc., 89 Fed. Rep. 2d652, cited by counsel for the complainant, and decided in 1937, is not applicable. It involved the stock of a corporation of the State of Missouri, which state has not adopted the Uniform Stock Transfer act.
It is also argued that section 14 of the Uniform Stock Transfer act is authority for the present proceeding. That section is as follows: *Page 415 
"A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction, by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof as is allowed at law or in equity, in regard to property which cannot readily be attached or levied upon by ordinary legal process."
But this language does not extend the power or force of the state's writ beyond the state's borders.
The motion to quash the service upon the defendant Mintz is granted.